Docket No. 109300.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

IRWIN INDUSTRIAL TOOL COMPANY, f/k/a American Tool Companies, Inc., as Successor by Merger to ATC Air, Inc., Appellant, v. THE ILLINOIS DEPARTMENT OF REVENUE *et al.*, Appellees.

*Opinion filed September 23, 2010.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

This appeal concerns the imposition of a use tax, pursuant to section 3 of the Use Tax Act (35 ILCS 105/3 (West 2008)), by the defendants, the Illinois Department of Revenue (Department), Brian Hamer, as the Director of Revenue, and Alexi Giannoulias, as the Illinois State Treasurer, on the purchase price of an airplane acquired by ATC Air, Inc. (ATC Air), a former subsidiary of American Tool Companies, Inc., now known as Irwin Industrial Tool Company (Irwin), the plaintiff. On ATC Air's behalf, Irwin paid the total amount assessed under protest, pursuant to section 2a.1 of the State Officers and Employees Money Disposition Act (30 ILCS 230/2a.1 (West 2008)), and filed a complaint seeking reimbursement. Only counts III and IV are relevant to this appeal. In count III, Irwin alleged that the use tax imposed did not meet the requirements of the commerce clause of the United States Constitution (U.S. Const., art.

I, §8, cl. 3) because there was no substantial nexus between the airplane and Illinois so as to permit the Department to tax the airplane's use in Illinois. Alternatively, in count IV, Irwin argued that even if there was a substantial nexus so as to subject the airplane to the Illinois use tax, the amount of tax imposed was unconstitutional under the commerce clause (U.S. Const., art. I, §8, cl. 3) because it was not "fairly apportioned," *i.e.*, it was based on the airplane's entire purchase price instead of its actual use in Illinois.

On cross-motions for summary judgment, the circuit court granted summary judgment in favor of the Department on count III, finding a substantial nexus between the airplane and Illinois so as to subject ATC Air to Illinois use tax liability. However, the circuit court granted summary judgment in favor of Irwin on count IV, finding that the Department could tax only 4% of the airplane's value based on the percentage of time it spent on the ground in Illinois. Both parties appealed. The appellate court affirmed as to count III, finding a sufficient physical connection between both ATC Air and the airplane and Illinois, so as to satisfy the "substantial nexus" requirement and allow the Department to impose a use tax on the airplane. However, the appellate court reversed as to count IV, finding that the circuit court erred in limiting the use tax to 4% of the airplane's value. For the following reasons, we affirm the judgment of the appellate court.

BACKGROUND

Irwin is a multinational corporation that manufactures and distributes tools through various domestic and foreign subsidiaries. During the relevant time period, Irwin's headquarters was in Lincoln, Nebraska, but it also had a corporate office in Hoffman Estates, Illinois. Of its seven corporate officers, four had their offices in Illinois, its chief executive officer (CEO), chief operating officer (COO)/president, chief financial officer (CFO), and corporate vice president (VP)/general counsel. In addition, of its four corporate directors, two had their offices in Illinois.

ATC Air was a wholly-owned subsidiary of Irwin, and its sole purpose was to provide air transportation services to Irwin and its affiliated companies. Irwin's CEO was ATC Air's only director, as well as its chairman and CEO. ATC Air's other officers were also

Irwin's officers. ATC Air's CEO/only director/chairman, CFO, and general counsel all had their offices in Illinois. ATC Air maintained all of its business records at its office in Lincoln, Nebraska, and had seven employees, all of whom lived and worked in Nebraska.

When ATC Air bought the airplane at issue here, it paid $7,670,710 in addition to trading in its previously owned airplane. ATC Air did not pay any sales tax on the purchase. ATC Air's VP/general counsel executed the contract to purchase the airplane from a company in Kansas. The contract, promissory note, guaranty, security agreement, trade-in agreement, and bill of sale listed ATC Air's address as 2800 West Higgins Road, Hoffman Estates, Illinois, which was Irwin's Illinois office. ATC Air took delivery of the airplane in Arkansas and flew it to Lincoln, Nebraska, where it was hangared.

ATC Air registered the airplane with the Federal Aviation Administration (FAA) by filing an aircraft bill of sale and an aircraft registration application. Both documents listed Irwin's Illinois office address as ATC Air's address. ATC Air subsequently filed an amendment to both documents, changing its address from Irwin's Illinois office to an address in Lincoln, Nebraska.

ATC Air owned the airplane for approximately two years–from April 12, 2000, through April 30, 2002. The airplane was used for customer visits, transporting Irwin's officers and employees from one location to another, and matters relating to acquisitions and lawsuits. ATC Air charged Irwin for the airplane's use, and ATC Air reported its income on federal and state consolidated income tax returns.

The airplane was flown on 290 days, flying to locations throughout the United States, Canada, and Mexico. On 143 of those days, or 49.3% of the flight days, the airplane flew to and/or from Illinois. There were a total of 734 flight segments, of which 271,[1] or 36.9%, originated and/or ended in Illinois. The airplane flew to and from Illinois so often because Irwin's principal officers, who were

---

[1]Although the appellate opinion states that 269 of the 734 flight segments (36.6%) originated or ended at an Illinois airport, according to our count based on the flight log, 271 of the 734 flight segments (36.9%) originated and/or ended at an Illinois airport.

among the airplane's main passengers, worked at Irwin's Illinois office. The airplane often flew empty to Illinois where it would pick up one of Irwin's corporate officers, fly him to various locations, return him to Illinois, and then fly empty back to its hangar in Nebraska.

ATC Air filed a Nebraska personal property tax return and claimed an exemption for the airplane. ATC Air was not subject to Nebraska use tax on the airplane because it was an exempt carrier for Nebraska sales and use tax purposes. ATC Air did not file a sales/use tax return in Illinois on the airplane. After ATC Air sold the airplane, Irwin dissolved ATC Air and assumed its liabilities.

Meanwhile, and unrelated to the dissolution of ATC Air, the Department audited the airplane's purchase and found that ATC Air used the airplane in Illinois and was liable to the state for unpaid use tax, which it assessed, pursuant to the Use Tax Act, based on the airplane's purchase price. Accordingly, the Department issued a notice of tax liability to ATC Air, assessing $536,950 in use tax, $500 in penalties, and $275,869.94 in accrued interest, for a total of $813,319.94. Irwin, as successor by merger to ATC Air, paid the amount assessed under protest, pursuant to section 2a.1 of the State Officers and Employees Money Disposition Act, and timely filed this action. Irwin made a second payment to the Department under protest in the amount of $6,596.70, representing additional accrued interest.

Irwin filed a six-count complaint for declaratory judgment and an injunction against the defendants. Only counts III and IV are relevant to this appeal. In count III, Irwin alleged that the Department should be precluded from imposing a use tax on the airplane under the commerce clause of the United States Constitution (U.S. Const., art. I, §8, cl. 3) because the airplane did not have a "substantial nexus" to Illinois. In the alternative, in count IV, Irwin argued that even if a use tax were permissible, under the commerce clause (U.S. Const., art. I, §8, cl. 3), the amount assessed by the Department was improper and should have been based on the airplane's actual use in Illinois instead of its total purchase price. Irwin subsequently filed a first amended complaint, raising the same arguments but alleging additional facts.

After stipulating to facts and exhibits, including the airplane's flight log, the parties filed cross-motions for summary judgment on

counts III and IV. Irwin argued that the commerce clause barred the Department from imposing a use tax because the airplane lacked a "substantial nexus" with Illinois. The airplane was hangared and maintained outside of Illinois and only made quick and periodic trips to the State. The flight log established that it spent only 3.65% of its time on the ground in Illinois and only 3.42% of its nights in Illinois. In the alternative, Irwin argued that the use tax violated the fair apportionment requirement of the commerce clause because it was based on the airplane's purchase price instead of the actual time it was used in Illinois.

In response, the Department argued that the airplane had sufficient connections with Illinois to justify a use tax under the commerce clause. The flight log established that the airplane was flown to and/or from Illinois on 49.3% of the days it was in flight to transport Irwin's Illinois-based executives. The Department argued that ATC Air's and the airplane's contacts with Illinois were repeated and prevalent, and therefore sufficient to support the tax assessment. In addition, with respect to the amount taxed, the Department argued that, under the plain language of the Use Tax Act, the amount of tax is to be determined based upon the airplane's purchase price or fair market value and not the percentage of time it was used in Illinois. See 35 ILCS 105/3–10 (West 2008) ("the tax imposed by this Act is at the rate of 6.25% of either the selling price or the fair market value, if any, of the tangible personal property"). The Department argued that in requiring "fairly apportioned" taxes, the commerce clause (U.S. Const., art. I, §8, cl. 3) is primarily concerned with preventing multiple taxation by different states, which is not an issue in this case because the airplane was never taxed in Nebraska or any other state. The Department argued that Illinois' use tax credit for taxes paid to another state was sufficient to avoid any threat of multiple taxation.

Following a hearing, the circuit court granted summary judgment in favor of the Department on count III, holding that there was a substantial nexus between the airplane and Illinois so as to permit the Department to impose a use tax. However, the circuit court granted summary judgment in favor of Irwin on count IV, finding that the Department could tax only 4% of the airplane's value based on the percentage of time the airplane spent on the ground in Illinois. The Department filed a motion to reconsider with respect to count IV,

which was denied. The circuit court issued a finding, pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), that there was no just cause for delay in appealing its ruling.

Both parties appealed. The appellate court affirmed the circuit court's judgment with respect to count III, finding a sufficient physical connection between both ATC Air and the airplane with Illinois, so as to meet the threshold requirement of "substantial nexus" and permit the Department to impose a use tax on the airplane. However, the appellate court reversed the judgment with respect to count IV, finding that the circuit court erred in limiting the use tax to 4% of the airplane's value. This court allowed Irwin's timely petition for leave to appeal. 210 Ill. 2d R. 315.

## ANALYSIS

### Standard of Review

This matter comes before us in the context of cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2008). The parties agree that there are no genuine issues of material fact raised in their cross-motions for summary judgment and that the case may be resolved as a matter of law. We review appeals from summary judgment rulings *de novo*. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010).

The constitutionality of a statute is also reviewed *de novo*. Statutes are presumed to be constitutional, and we must construe a statute so as to uphold its constitutionality if it is reasonably possible to do so. The party challenging the validity of a statute has the burden of clearly establishing a constitutional violation. *People v. Graves*, 235 Ill. 2d 244, 249 (2009).

### Illinois' Use Tax

Illinois' use tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail." 35 ILCS 105/3 (West 2008). The tax complements the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq*. (West 2008)), Illinois' primary means of

taxing the retail sale of tangible personal property. The primary purpose of the use tax is to prevent avoidance of the retailers' occupation tax by those making out-of-state purchases and to protect Illinois retailers against diversion of business to out-of-state retailers. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 418 (1996). The use tax is imposed at the same rate as the retailers' occupation tax. 35 ILCS 105/3–10 (West 2008); 35 ILCS 120/2–10 (West 2008).

Where, as here, the retailer is located outside Illinois and has no obligations under the Use Tax Act, the user in Illinois must pay the use tax directly to the state. 35 ILCS 105/10 (West 2008). However, a user is exempt from paying the use tax for the use of "tangible personal property that is acquired outside this State and caused to be brought into this State by a person who has already paid a tax in another State in respect to the sale, purchase, or use of that property, to the extent of the amount of the tax properly due and paid in the other State." 35 ILCS 105/3–55(d)(West 2008).


Commerce Clause

The commerce clause of the United States Constitution expressly gives Congress the power to "regulate Commerce *** among the several States." U.S. Const., art. I, §8, cl. 3. The Supreme Court has consistently interpreted this express grant of congressional authority as implicitly containing a negative command, known as the dormant commerce clause, which limits the power of the states to tax interstate commerce even when Congress has failed to legislate on the subject. This construction serves the "Commerce Clause's purpose of preventing a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as it would do if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179-80, 131 L. Ed. 2d 261, 268, 115 S. Ct. 1331, 1335-36 (1995).

Contemporary dormant commerce clause analysis does not prohibit all state taxation of interstate commerce but rather only that which is unduly restrictive or discriminatory. See *Jefferson Lines*, 514 U.S. at 179-83, 131 L. Ed. 2d at 268-71, 115 S. Ct. at 1335-37. To withstand a claim that it has unconstitutionally burdened interstate

commerce, a state tax must satisfy the four-part test enunciated in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977). Under *Complete Auto*, the tax must: (1) be applied to an activity with a substantial nexus with the taxing state; (2) be fairly apportioned; (3) not discriminate against interstate commerce; and (4) be fairly related to the services provided by the state. *Complete Auto*, 430 U.S. at 279, 51 L. Ed. 2d at 331, 97 S. Ct. at 1079.

In the present case, Irwin argues that the use tax failed to satisfy the first two prongs of the *Complete Auto* test. We begin by addressing the substantial nexus requirement.

Substantial Nexus

Both the due process and commerce clauses require a definite link, or minimum connection, between a state and the person, property, or transaction it seeks to tax. In the case of a tax on an activity, there must be a connection to the activity itself, rather than a connection only to the individual or corporation the state seeks to tax. The state's power to tax an individual's or corporation's activity is justified by the protection, opportunities, and benefits the state confers on that activity. *Allied-Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768, 777-78, 119 L. Ed. 2d 533, 545-46, 112 S. Ct. 2251, 2258 (1992).

In order to satisfy the substantial nexus requirement in the sales and use tax context, physical presence within the taxing state is necessary. *Quill Corp. v. North Dakota*, 504 U.S. 298, 317-18, 119 L. Ed. 2d 91, 110, 112 S. Ct. 1904, 1916 (1992). *Quill* reaffirmed that the "slightest" physical presence within a state is not enough to establish substantial nexus. *Quill*, 504 U.S. at 315 n.8, 119 L. Ed. 2d at 108 n.8, 112 S. Ct. at 1914 n.8. Left unclear after *Quill*, however, was the extent of physical presence in a state necessary to establish more than a "slight" physical presence. In *Brown's Furniture*, we addressed the issue and concluded that the physical presence need not be "substantial" but must be more than a "slightest presence." *Brown's Furniture*, 171 Ill. 2d at 424.

With the foregoing principles and decisions in mind, we now consider whether ATC Air and the airplane at issue had a sufficient

-8-

physical presence in Illinois to establish a substantial nexus with the state. Even though the airplane was hangared and maintained outside of Illinois, its flight log established that during the relevant two-year time period, it made a total of 272[2] take-offs or landings at Illinois airports, which included flights in and/or out of Illinois on nearly half of the days on which any flights were made. In fact, the flight log established that 36.9% of the total flight segments for the airplane were logged on flights to and/or from Illinois. In addition, the airplane was present overnight at one of Illinois' airports on 25 occasions.

The airplane's frequent physical presence in Illinois, through the many take-offs and landings from Illinois runways, as well as the nights that it spent in Illinois, was not coincidental, but was inherent in its basic purpose and function in this state. The airplane was owned by ATC Air, whose corporate purpose was to provide transportation services to Irwin's officers and employees. Thus, the airplane frequently and regularly flew to Illinois at the behest of Irwin's corporate officers (four of whom had their offices in Illinois) to transport them to and from destinations throughout the United States. Moreover, when the airplane was initially purchased, the purchase agreement, as well as the bill of sale and registration application filed with the FAA, all listed Irwin's Illinois corporate office as ATC Air's primary address.

In *Director of Revenue v. Superior Aircraft Leasing Co.*, 734 S.W.2d 504 (Mo. 1987), the Missouri Supreme Court addressed a case with facts very similar to those in the present case. There, a Missouri corporation, with its principal place of business in Ohio, purchased and took delivery of an airplane in Kansas. The airplane was hangared in Ohio. When the Missouri Department of Revenue imposed a use tax on the airplane's purchase, the corporation objected on commerce clause grounds. *Superior Aircraft Leasing*, 734 S.W.2d at 505. The Missouri Supreme Court held that, although the airplane was hangared and maintained in Ohio, there were sufficient contacts with Missouri to satisfy the substantial nexus requirement. The court

---

[2]Although the appellate opinion states that the airplane made 290 take-offs and landings at Illinois airports, according to our count based on the flight log, the airplane actually made 272 take offs or landings (136 of each) at Illinois airports.

noted that 17.7% of the airplane's total flight hours were logged on flights to Missouri for the corporation's business. The time spent in Missouri for each of those trips ranged from several days to approximately a week. *Superior Aircraft Leasing*, 734 S.W.2d at 507.

Irwin attempts to distinguish *Superior Aircraft Leasing* by pointing out that the airplane in that case occasionally spent several days or a week on the ground in Missouri. However, the time the airplane spent on the ground in Missouri was much less significant to the *Superior Aircraft* court's decision than the time the airplane spent in flight between Missouri and other destinations, which demonstrated the significance of the airplane's presence inside the state, as it related to its purpose, function, and use. Similarly, in the present case, the time the airplane spent on the ground in Illinois is much less significant to our decision than the time the airplane spent in flight between Illinois and other destinations, which demonstrates the significance of the airplane's presence inside Illinois, as it relates to its purpose, function, and use. Moreover, in the present case, in addition to the time spent in take-offs and landings on Illinois runways, the airplane spent 25 full nights in Illinois.

Irwin also attempts to distinguish *Superior Aircraft Leasing* by arguing that, in that case, the taxpayer was a Missouri corporation and therefore had obvious contacts with Missouri so as to meet the substantial nexus requirement, whereas, in this case, ATC Air was not an Illinois corporation. We find this distinction unpersuasive. First, we note that, although Superior Aircraft Leasing was a Missouri corporation, its principal place of business was in Ohio, and the airplane was hangared and maintained there. Similarly, here, ATC Air's principal place of business was in Nebraska, and the airplane was hangared and maintained there. In addition, although ATC Air was not an Illinois corporation, the record establishes that ATC Air had a demonstrated physical presence in Illinois. ATC Air's sole director, and its chairman and CEO, had his office in Illinois, as did its CFO and its general counsel. Moreover, ATC Air did a substantial portion of its business in Illinois, in that its pilot-employees frequently and regularly flew its airplane into and out of Illinois to transport Irwin's corporate officers and directors to and from their offices in Illinois.

Accordingly, we find that both ATC Air and the airplane had

-10-

more than a "slight" physical presence in Illinois and met *Complete Auto*'s substantial nexus requirement so as to allow the Department to impose a use tax on the airplane. We thus proceed to the fair apportionment argument.

Fair Apportionment

The primary purpose of the fair apportionment prong of the *Complete Auto* test is to prevent multiple taxation by "ensur[ing] that each State taxes only its fair share of an interstate transaction." *Goldberg v. Sweet*, 488 U.S. 252, 260-61, 102 L. Ed. 2d 607, 616, 109 S. Ct. 582, 588 (1989). However, the Supreme Court has long held that the Constitution imposes no single apportionment formula on the states and has therefore declined to undertake the essentially legislative task of establishing a single constitutionally mandated method of taxation. Instead, the Court has determined whether a tax is fairly apportioned by examining whether the tax is internally and externally consistent. *Goldberg*, 488 U.S. at 261, 102 L. Ed. 2d at 616, 109 S. Ct. at 588-89. "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261, 102 L. Ed. 2d at 617, 109 S. Ct. at 589, citing *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 169, 77 L. Ed. 2d 545, 556, 103 S. Ct. 2933, 2942 (1983). "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262, 102 L. Ed. 2d at 617, 109 S. Ct. at 589, citing *Container Corp.*, 463 U.S at 169-70, 77 L. Ed. 2d at 556, 103 S. Ct. at 2942. The Court thus examines "the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity." *Goldberg*, 488 U.S. at 262, 102 L. Ed. 2d at 617, 109 S. Ct. at 589.

In the present case, Irwin concedes that the use tax imposed on the full value of the airplane is internally consistent because the Use Tax Act contains an exemption from use tax for tangible personal property that has been subjected to sales or use taxes in other states (see 35 ILCS 105/3–55(d) (West 2008)). However, Irwin argues that the use tax is not externally consistent. Irwin argues that because the airplane was hangared and maintained in Nebraska, and traveled to more than

-11-

30 states and jurisdictions, spending less than 4% of its total time on the ground in Illinois, the tax on the airplane's full value is not fairly apportioned. For the reasons that follow, we disagree.

The Supreme Court has consistently approved taxation of sales without any division of the tax base among different states and has instead held such taxes properly measurable by the gross charge for the purchase. *Jefferson Lines*, 514 U.S. at 186, 131 L. Ed. 2d at 272, 115 S. Ct. at 1339. Because a use tax is generally levied to compensate the taxing state for its incapacity to reach the corresponding sale, it is commonly paired with a sales tax and is applicable only when no sales tax has been paid or subject to a credit for any such tax paid. *Jefferson Lines*, 514 U.S. at 193-94, 131 L. Ed. 2d at 277, 115 S. Ct. at 1342-43. The District of Columbia and 44 of the 45 states that impose sales and use taxes allow such a credit or exemption for similar taxes paid to other states. *Jefferson Lines*, 514 U.S. at 194, 131 L. Ed. 2d at 277, 115 S. Ct. at 1343.

These credit or exemption provisions create a national system where the state of purchase or first use imposes the tax. No other state taxes the transaction unless no prior tax has been imposed or if the tax rate of the prior taxing state is less, in which case the subsequent taxing state imposes a tax measured only by the differential rate. *Jefferson Lines*, 514 U.S. at 194, 131 L. Ed. 2d at 277-78, 115 S. Ct. at 1343, quoting *KSS Transportation Corp. v. Baldwin*, 9 N.J. Tax 273, 285 (1987).

The Supreme Court has indicated that such credit provisions resolve the problem of multiple taxation and satisfy the fair apportionment requirement. See, *e.g.*, *Goldberg*, 488 U.S. at 264-65, 102 L. Ed. 2d at 618-19, 109 S. Ct. at 590-91 (in holding that a tax on the full amount of interstate telephone calls did not violate the external consistency requirement, the Court noted that "[t]o the extent that other States' telecommunications taxes pose a risk of multiple taxation, the credit provision contained in the Tax Act operates to avoid actual multiple taxation"); *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 31, 100 L. Ed. 2d 21, 28, 108 S. Ct. 1619, 1623-24 (1988) ("We have no doubt that the second *** element[ ] of [*Complete Auto* is] satisfied. The Louisiana taxing scheme is fairly apportioned, for it provides a credit against its use tax for sales taxes that have been paid in other States"); *Tyler Pipe Industries, Inc. v. Washington State*

*Department of Revenue*, 483 U.S. 232, 245 n.13, 97 L. Ed. 2d 199, 212 n.13, 107 S. Ct. 2810, 2819 n.13 (1987) ("Many States provide tax credits that alleviate or eliminate the potential multiple taxation that results when two or more sovereigns have jurisdiction to tax parts of the same chain of commercial events"); *Henneford v. Silas Mason Co.*, 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937) (upholding a use tax that contained an exemption for property that had already been subject to a sales or use tax in another state).

Accordingly, Illinois courts have held, as the appellate court did here, that such credit or exemption provisions resolve the problem of multiple taxation and satisfy the fair apportionment requirement. See, *e.g.*, *Goldberg v. Johnson*, 117 Ill. 2d 493, 503 (1987) (finding that Illinois' credit against any tax due from a taxpayer who had paid two or more taxes on the same interstate telecommunication cured any possible constitutional infirmity resulting from multiple taxation); *American River Transportation Co. v. Bower*, 351 Ill. App. 3d 208, 213 (2004) (finding Illinois' use tax fairly apportioned because no tax was paid in another state, and if a tax had been paid in another state, the Use Tax Act would exempt the taxpayer from the Illinois use tax for any amounts that had been paid); *Square D Co. v. Johnson*, 233 Ill. App. 3d 1070, 1080 (1992) (same).

In *Archer Daniels Midland Co. v. Department of Revenue*, 170 Ill. App. 3d 1014 (1988), a case factually similar to the present case, the appellate court rejected a Delaware corporation's argument that Illinois' use tax should not have been based on the full value of three airplanes purchased outside of Illinois but instead that the tax should have been based upon the proportion of take-offs and landings from or in Illinois compared to total flight take-offs and landings. *Archer Daniels Midland*, 170 Ill. App. 3d at 1015, 1022. The appellate court further rejected the corporation's argument that flight segments that had no connection with Illinois should not have been taxed, because they were not related to any service provided by Illinois, and taxing the full purchase price in essence taxed the corporation for activities unrelated to the state. *Archer Daniels Midland*, 170 Ill. App. 3d at 1022. The appellate court agreed with the Department that Illinois' use tax on the full value of the airplanes was fairly apportioned because the statute exempts property where a sales or use tax has been paid in another state. *Archer Daniels Midland*, 170 Ill. App. 3d

-13-

at 1022. In holding that the Department could impose a use tax on the full value of the airplanes, the appellate court explained:

> "[The corporation] has not claimed that it paid taxes on its planes elsewhere; therefore, it has not been subject to multistate taxation. The sales and use taxes are complementary and equalize the burden on interstate and intrastate transactions. The sales tax is measured by the purchase price of an item, without regard to the amount of use the item will receive, and so is the use tax. Nor is the use tax a precise charge for benefits provided by the State. [The corporation] enjoys the protection of Illinois laws, access to its legal system, and innumerable other services. Because [the corporation] receives all these benefits, it is properly subject to taxation in this State." *Archer Daniels Midland*, 170 Ill. App. 3d at 1022-23.

Similarly, in *Frank W. Whitcomb Construction Corp. v. Commissioner of Taxes*, 144 Vt. 466, 467-68, 479 A.2d 164, 165 (1984), the Vermont Supreme Court upheld the imposition of Vermont's use tax on the full value of a New Hampshire owned airplane that spent 17% of its flight time in Vermont. In doing so, the court overruled the circuit court's decision to apportion the taxpayer's liability based on the amount of time the airplane spent in Vermont. *Frank W. Whitcomb Construction Corp.*, 144 Vt. at 467, 479 A.2d at 165. The court explained:

> "The Commerce Clause does not require an apportionment in addition to a tax credit. The rule of *Complete Auto* [citation] requiring a tax on interstate commerce to be 'fairly apportioned' is satisfied here. The state has provided a tax credit in lieu of apportionment. This credit, not unlike a proportionate tax, eliminates the possibility of cumulative use tax liability. The Vermont legislature has chosen not to incorporate apportionment within the use tax scheme. This Court, therefore, is without power to impose such a requirement. [Citation.] We agree with the Commissioner that apportionment of this tax is neither constitutionally required nor legislatively authorized." *Frank W. Whitcomb Construction Corp.*, 144 Vt. at 473, 479 A.2d at 168.

Following the same rationale, other jurisdictions throughout the United States have found use taxes fairly apportioned where a system of credits is in place. See, *e.g.*, *Ex Parte Fleming Foods of Alabama, Inc.*, 648 So. 2d 577 (Ala. 1994); *Service Merchandise Co. v. Arizona Department of Revenue*, 188 Ariz. 414, 937 P.2d 336 (App. 1996); *Pledger v. Brunner & Lay, Inc.*, 308 Ark. 512, 825 S.W.2d 599 (1992); *Yamaha Corp. of America v. State Board of Equalization*, 73 Cal. App. 4th 338, 86 Cal. Rptr. 2d 362 (1999); *General Motors Corp. v. City & County of Denver*, 990 P.2d 59 (Colo. 1999); *In re Tax Appeal of Taylor Crane & Rigging, Inc.*, 22 Kan. App. 2d 27, 913 P.2d 204 (1995); *Wabash Power Equipment Co. v. Lindsey*, 2003–2196 (La. App. 1 Cir. 9/17/04); 897 So. 2d 621; *Chesapeake & Potomac Telephone Co. of Maryland v. Comptroller of the Treasury, Retail Sales Tax Division*, 317 Md. 3, 561 A.2d 1034 (App. 1989); *Kellogg Co. v. Department of Treasury*, 204 Mich. App. 489, 516 N.W.2d 108 (1994); *Miller v. Commissioner of Revenue*, 359 N.W.2d 620 (Minn. 1985); *Tennessee Gas Pipeline Co. v. Marx*, 594 So. 2d 615 (Miss. 1992); *Director of Revenue v. Superior Aircraft Leasing Co.*, 734 S.W.2d 504 (Mo. 1987); *KSS Transportation Corp. v. Baldwin*, 9 N.J. Tax 273 (1987); *PPG Industries, Inc. v. Tracy*, 74 Ohio St. 3d 449, 1996–Ohio–116 ; *House of Lloyd v. Commonwealth*, 684 A.2d 213 (Pa. 1996).

In opposition to this overwhelming weight of authority, Irwin cites to only one Alabama case, *Boyd Brothers Transportation, Inc. v. State Department of Revenue*, 976 So. 2d 471, 482 (Ala. App. 2007), where the appellate court held that an unapportioned flat use tax on the value of trucks discriminated against interstate commerce. We find, however, that the appellate court in *Boyd Brothers* deviated from a decision of its own supreme court, which expressly rejected an apportionment claim where a credit system was in place. See *Ex Parte Fleming Foods of Alabama, Inc v. Department of Revenue*, 648 So. 2d 577, 579 (Ala. 1994) (" 'The provision of a *credit* in a use tax statute for sales or use tax paid to another state makes a use tax externally consistent, as much as such a provision avoids actual multiple taxation' " (emphasis in original)), quoting 68 Am. Jur. 2d *Sales & Use Tax* §188 (1973). Moreover, while *Boyd Brothers* was decided after *Fleming Foods*, the decision did not even address the issue of credit provisions in lieu of apportionment.

Consequently, we conclude that Illinois' use tax based on the full purchase price of the airplane is externally consistent and thus fairly apportioned because no tax has been paid on the airplane to any other state, and even if it had been, the Use Tax Act provides an exemption for sales or use taxes paid to other states. Accordingly, we find that the appellate court properly reversed that portion of the circuit court's judgment limiting the use tax to 4% of the airplane's purchase price.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed*.