# Illinois Official Reports

## Appellate Court

---

*People ex rel. Lindblom v. Sears Brands, LLC*, 2018 IL App (1st) 171468

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* RICHARD LINDBLOM and RALPH LINDBLOM, Plaintiffs-Appellants, v. SEARS BRANDS, LLC, an Illinois Corporation, HOME DEPOT, U.S.A., INC., a Georgia Corporation, LOWE'S HOME CENTERS, LLC, a North Carolina Corporation, BEST BUY STORES, L.P., a Minnesota Corporation, and GREGG APPLIANCES, INC., an Indiana Corporation, Defendants (Best Buy Stores, L.P., a Minnesota Corporation, Defendant-Appellee). |
| District & No. | First District, Second Division Docket No. 1-17-1468 |
| Filed | April 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-50776; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Paul Berks, of Massey & Gail, LLP, of Chicago, for appellants. Baker & McKenzie LLP, of Chicago (Scott L. Brandman, David A. Pope, Matthew S. Mock, and David A. Hemmings, of counsel), for appellee. |

Panel JUSTICE MASON delivered the judgment of the court, with opinion. Justices Pucinski and Hyman concurred in the judgment and opinion.

## OPINION

¶ 1 Relators-appellants, Richard Lindblom and Ralph Lindblom, brought this *qui tam* action on behalf of themselves and the State of Illinois under the Illinois False Claims Act (Act) (740 ILCS 175/1 *et seq.* (West 2014)) against defendants Sears Brands, LLC (Sears); Home Depot U.S.A., Inc. (Home Depot); Lowe's Home Centers, LLC (Lowe's); Best Buy Stores, L.P. (Best Buy); and Gregg Appliances, Inc. (Gregg Appliances). This appeal involves only defendant-appellee Best Buy. For purposes of this appeal, relators alleged that Best Buy knowingly engaged in a scheme to avoid payment of retailers' occupation tax (sales tax) and use tax by treating the sale and installation of dishwashers and over-the-range microwave ovens as a construction contract, which is not subject to the collection of sales tax from purchasers. At the time relators added Best Buy as a defendant, the Illinois Department of Revenue (Department) was in the process of auditing Best Buy's sales tax calculation practices and had issued a proposed tax liability. Best Buy requested review of the proposed tax liability by the Department's Informal Conference Board (Board). Best Buy moved to dismiss relators' *qui tam* complaint under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)), asserting that the "government action bar" set forth in section 4(e)(3) of the Act (740 ILCS 175/4(e)(3) (West 2014)) barred relators' *qui tam* action because it was the subject of an administrative civil money penalty proceeding (the audit combined with the Board's review) and the State was already a party in that proceeding. The trial court agreed with Best Buy's position and dismissed Best Buy from relators' *qui tam* action.

¶ 2 Relators appeal the dismissal, asserting that the audit and the Board's review were not adversarial and, thus, could not be an administrative civil money penalty proceeding. Relators also contend that the subject of the audit and the Board's review were different from the *qui tam* suit that focused on fraud and Best Buy's knowing misclassification of sales of over-the-range microwaves and dishwashers as a construction contract in order to avoid remittance of sales tax to the Department. Finding merit in relators' position, we reverse and remand for further proceedings.

¶ 3                                   BACKGROUND
¶ 4                        A. Retailers' Occupation Tax Act
¶ 5 In Illinois, the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2014)) imposes sales tax on retailers selling tangible personal property to purchasers for use or consumption. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 362 (2009) (citing 35 ILCS 120/2 (West 2006)); 86 Ill. Adm. Code 130.101 (2005). The use tax complements the sales tax and is imposed on taxpayers for the use of tangible personal property purchased from a retailer. *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 340 (2010) (citing 35 ILCS 105/3 (West 2008)); 86 Ill. Adm. Code 150.101(a) (1991). The sales tax is computed as a percentage of "gross receipts" (35 ILCS 120/2-10 (West 2014)), defined as the "total selling price" (*id.* § 1). *Citibank*, *N.A. v. Illinois Department of Revenue*, 2017 IL 121634, ¶ 2. A retailer remits the

sales tax collected from the purchaser to the Department. *Id.* On the other hand, a construction contract involves the incorporation of tangible personal property into real estate, and such contracts are not subject to sales tax on the labor furnished and tangible personal property (materials and fixtures) incorporated into a structure. 86 Ill. Adm. Code 130.1940(c) (2000); 86 Ill. Adm. Code 130.2075(a)(2) (2001). Instead, the construction contractor pays a use tax based on the price it paid for the affixed property. 86 Ill. Adm. Code 130.1940(c) (2000); 86 Ill. Adm. Code 130.2075(a)(2) (2001). Stated simply, a purchaser does not pay sales tax on a construction contract.

¶ 6                                   B. The False Claims Act

¶ 7        Several sections of the Act are relevant here. Section 3(a)(1)(G) provides that any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State" is liable to the State for a civil penalty. 740 ILCS 175/3(a)(1)(G) (West 2014). Section 4(b)(1) authorizes private persons, referred to as plaintiffs-relators, to bring civil actions on behalf of themselves and on behalf of the State of Illinois against any person violating section 3(a)(1)(G). *Id.* § 4(b)(1); *State ex rel. Beeler, Schad & Diamond, P.C. v. Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d 507, 510 (2006) (citing 740 ILCS 175/4(b)(1) (West 2002)). The action brought by a relator is known as a "*qui tam*" action. *Id.* (citing 740 ILCS 175/4(c) (West 2002)). But under section 4(e)(3), a relator may not "bring an action under subsection (b) [permitting *qui tam* actions] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the State is already a party." 740 ILCS 175/4(e)(3) (West 2014). Section 4(e)(3)'s restriction is known as the "government action bar." See *United States ex rel. Batty v. Amerigroup Illinois, Inc.*, 528 F. Supp. 2d 861, 876 & n.12 (N.D. Ill. 2007) (referring to 31 U.S.C. § 3730(e)(3) (2006), a federal parallel provision to 740 ILCS 175/4(e)(3), as the government action bar).   The government action bar prohibits *qui tam* actions that are parasitic in that they duplicate the State's civil suits or administrative proceedings without giving the government any useful return, other than the potential for additional monetary recovery. *People ex rel. Schad, Diamond & Shedden, P.C. v. QVC, Inc.*, 2015 IL App (1st) 132999, ¶ 23; 740 ILCS 175/4 (West 2014).

¶ 8        After a relator files a *qui tam* action, the State may elect to intervene, take over and proceed with the action, or decline to intervene giving the relator the right to conduct the action. *Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d at 510 (citing 740 ILCS 175/4(b)(4) (West 2002)). A relator is a party to the *qui tam* action and is awarded a percentage of the proceeds or settlement if the action is successful. *Id.* (citing 740 ILCS 175/4(c)(1), (d) (West 2002)).

¶ 9                                   C. The Lindbloms' Case

¶ 10       Richard and Ralph Lindblom are brothers, and they own and operate Advanced Appliance, Inc., d/b/a Advanced Maytag Home Appliance Center (Advanced Maytag), located in Schaumburg, Illinois. Advanced Maytag's business consists of selling and servicing home appliances. Likewise, a portion of Best Buy's business includes selling home appliances, such as dishwashers and over-the-range microwaves.

¶ 11       Beginning in the late 1970s, the relators' father, who owned Advanced Maytag at the time, learned that Advanced Maytag's competitor, defendant Sears, did not charge sales tax on the

retail sales of dishwashers and over-the-range microwaves when the purchaser also arranged for delivery and installation services from Sears because Sears treated those sales as a construction contract, which was not subject to the collection of sales tax from purchasers. Relators later learned that the other named defendants, including Best Buy, followed Sears's practice of failing to remit sales tax on the gross receipts from the sale of dishwashers and over-the-range microwaves by treating sales of those appliances as construction contracts. Relators believed this practice was a knowing and purposeful scheme to avoid remitting the taxes owed on the sale of dishwashers and over-the-range microwaves. Relators estimated that Advanced Maytag lost approximately 36 sales a year to defendants based on defendants' lower prices due to their failure to collect and remit the requisite sales tax.

¶ 12    In February 2015, relators contacted the Department and provided specific examples of defendants' failure to charge purchasers sales tax on dishwashers and over-the-range microwaves when also arranging for delivery and installation of those appliances. The Department acknowledged that defendants may have stretched the interpretation of "affixed to real estate," as well as what constitutes a construction contract versus a retail purchase with separate installation.

¶ 13    Following and allegedly in response to the information provided by relators, in June 2015, the Department issued a compliance alert to retailers addressing the proper tax treatment of appliances and other tangible personal property sold with installation services and whether those sales qualified as construction contracts. The compliance alert clarified that if a customer who is the end user of tangible personal property makes a retail purchase and enters into a separate agreement for installation, then the sale is an over-the-counter transaction subject to sales tax. The compliance alert explained that the sale of tangible personal property along with a separate agreement to install the property does not convert a retail sale into a construction contract. The applicable tax relating to the sale of tangible personal property is based either on the cost of the property affixed to real estate as part of a construction contract, or on the selling price of items sold over-the-counter.

¶ 14    On August 31, 2015, Best Buy received a notice of audit initiation from the Department notifying Best Buy that it was conducting a limited scope review of Best Buy's appliance sales to Illinois customers for the audit period from July 1, 2012, through December 31, 2013. The Department's audit of Best Buy was confidential and not publically disclosed. 35 ILCS 120/11 (West 2014).

¶ 15    During an audit, the Department examines the procedures a taxpayer has used in tax returns to calculate the tax base, any exemptions and deductions claimed, and the overall accuracy of the tax return filed. 35 ILCS 5/904(a) (West 2014); Ill. Dep't of Revenue, Illinois Audit Information, http://tax.illinois.gov/Publications/PIOs/PIO-60.pdf (last visited Apr. 12, 2018). After the auditor has examined the taxpayer's books and records, the Department issues a written notice of proposed liability, notice of proposed deficiency, or notice of proposed (refund) claim denial reflecting the auditor's proposed audit adjustment. 86 Ill. Adm. Code 215.115 (2007).

¶ 16    A taxpayer may request review by the Department's Board of the proposed audit adjustments, and the Board's review is informal in nature. *Id.* The Board's informal review process affords taxpayers an opportunity to resolve disagreements with the Department's proposed audit adjustments before commencement of the formal protest and administrative hearing process. 86 Ill. Adm. Code 215.100 (2007). The Board's goal is to ensure that the

Department's proposed audit adjustments disputed by the taxpayer are correct and to resolve disputes with taxpayers concerning their tax liability at the earliest opportunity possible. *Id.* A taxpayer may request an in-person conference with the Board, but the Board conducts no hearing of any type and formal rules of evidence do not apply at the informal conference. 86 Ill. Adm. Code 215.130 (2007). Documentation or information submitted to the Board by a taxpayer does not become part of any formal record and cannot be forwarded to any other agency or judicial body for purposes of making a determination on the merits of any case. 86 Ill. Adm. Code 215.120(c) (2007). Instead, both the taxpayer and the Department must provide all evidence that they wish to be considered directly to those entities in the event of a later dispute. *Id.* The Board's informal conference process is not subject to the requirements of the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2014)), and the Board's final action is not subject to administrative review. 86 Ill. Adm. Code 215.120 (2007).

¶ 17    After the Board concludes its review, the Board issues an action decision and the audit is finalized. *Id.*; Ill. Dep't of Revenue, Informal Conference Board Review, http://tax.illinois.gov/Publications/PIOs/PIO-58.pdf (last visited Apr. 12, 2018). If the Board upholds the proposed tax liability, the Department issues a notice of tax liability. Following receipt of a notice of tax liability, a taxpayer may dispute the imposition of the tax by withholding payment and participating in an administrative hearing. 35 ILCS 120/4, 12 (West 2014); Ill. Dep't of Revenue, Illinois Audit Information, http://tax.illinois.gov/ Publications/PIOs/PIO-60.pdf (last visited Apr. 12, 2018). An administrative hearing is a formal legal proceeding, and it is presided over by an administrative law judge. *Slater v. Department of Children & Family Services*, 2011 IL App (1st) 102914, ¶ 28; Ill. Dep't of Revenue, Illinois Audit Information, http://tax.illinois.gov/Publications/PIOs/PIO-60.pdf (last visited Apr. 12, 2018). Alternatively, the taxpayer may pay the tax under protest and seek judicial determination of the tax dispute under the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/1 *et seq.* (West 2014)) in lieu of exhausting its administrative remedies under the tax code. *National City Corp. & Subsidiaries v. Department of Revenue*, 366 Ill. App. 3d 37, 44 (2006).

¶ 18    On November 12, 2015, relators filed this whistleblower *qui tam* action under the Act, alleging that big-box appliance retailers, Sears, Home Depot, Lowe's, and Gregg Appliances, violated section 3(a)(1)(G) by knowingly and improperly avoiding or decreasing their obligation to collect and remit sales tax on dishwashers and over-the-range microwaves sold in conjunction with installation of the appliance. Best Buy was not originally named as a defendant. After receiving relators' complaint and pertinent information, the Attorney General, on behalf of the State, elected not to intervene in the action, and relators brought this action on their own behalf and on behalf of the State. At the time the complaint was filed, the Department had not completed its audit of Best Buy, nor had the fact of the ongoing audit been publically disclosed.

¶ 19    About two months later on January 25, 2016, the Department sent Best Buy a notice of proposed liability asserting that Best Buy owed sales tax on certain sales of appliances that were sold with installation and delivery and assessed $173,610 in tax, $26,040 in penalties, and $11,026 in interest. Best Buy requested full abatement of the assessed penalty, which the Department granted. On March 23, 2016, Best Buy requested review of the proposed liability by the Board. Best Buy asserted that it acted properly as a construction contractor not subject to sales tax on receipts from labor furnished and tangible personal property installed into a

structure as an integral part of real property. Best Buy claimed that instead of sales tax, it incurred and remitted use tax on the cost of the tangible personal property that was permanently affixed to real property as the end user of the property. The Board granted Best Buy's request for an in-person conference, which was held on October 11, 2016.

¶ 20 While the Board's review was pending, relators amended their *qui tam* complaint to include Best Buy as a defendant. Approximately a month later on September 28, 2016, relators filed a second amended complaint, which is the subject of this appeal. In that complaint, relators alleged that defendants, including Best Buy, engaged in a scheme to conceal and avoid their obligations to pay sales tax to the State. The alleged scheme involved defendants characterizing nonpermanently affixed installed appliances (dishwashers and over-the-range microwaves) as permanent improvements to real property to avoid collecting sales tax from their customers. Relators asserted that defendants knowingly and incorrectly designated the sales of these appliances when they arranged for delivery and installation as construction contracts (instead of retail sales) and knowingly failed to collect and remit sales tax on the gross receipts from the sales of those appliances.

¶ 21 Defendants filed a joint motion to dismiss the second amended complaint, asserting that relators failed to plead fraud with the requisite specificity demonstrating that defendants knowingly submitted false claims and failed to remit the required tax due.

¶ 22 Best Buy also moved separately to dismiss the second amended complaint on the independent ground that the government action bar of section 4(e)(3) barred relators' claims because the claims were the subject of an administrative civil money penalty proceeding in which the State was already a party. Best Buy took the position that the government action bar applied because by the time relators named Best Buy as a defendant, the Department had completed its field audit and issued a notice of proposed liability and Best Buy had initiated the Board's review, which collectively constituted an administrative civil money penalty proceeding that addressed the exact tax issues raised by relators in the *qui tam* action. Best Buy characterized the *qui tam* action as nothing more than a parasitic lawsuit that provided no benefit to the State.

¶ 23 On January 23, 2017, after Best Buy filed its motions to dismiss and before the trial court ruled on those motions, the Board denied Best Buy's request to withdraw the tax and interest liabilities assessed in the notice of proposed liability. Best Buy received the Department's "Notice of Tax Liability" dated April 4, 2017, which assessed $173,610 in tax and $18,537.58 in interest for the audit period. Best Buy objected to the assessed liability by filing an action under the Protest Monies Act (30 ILCS 230/2a (West 2014)).

¶ 24 After a hearing on defendants' motions to dismiss held on the same day Best Buy received the Department's notice of tax liability, the trial court granted defendants' joint section 2-615 motion to dismiss without prejudice, finding that the complaint failed to plead fraud with specificity. The trial court reserved ruling on Best Buy's separate motion to dismiss and directed the parties to submit additional briefs on the issue of whether the Department's audit procedures constituted an administrative civil money penalty proceeding that barred relators' *qui tam* claim. After reviewing the supplemental briefs, the trial court found that the government action bar applied because the Department's audit and notice of proposed liability, combined with Best Buy's invocation of the Board's informal assessment review, constituted an administrative civil money penalty proceeding. The trial court also found that the *qui tam* action and the prior administrative proceedings both involved the same core factual

allegations: that Best Buy was not a construction contractor and was subject to sales tax on the sale of dishwashers and over-the-range microwaves. The trial court granted Best Buy's motion to dismiss with prejudice, dismissed Best Buy from the matter, and entered an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding.[1] Relators' timely appeal follows.

¶ 25                                                    ANALYSIS

¶ 26       The dispositive issue on appeal is whether the Department's audit in conjunction with the Board's informal review was an administrative civil money penalty proceeding barring relators' *qui tam* action pursuant to the government action bar.

¶ 27       Because we must determine what qualifies as an administrative civil money penalty proceeding as that term is used in the Act, the issue before us is a matter of statutory construction. It is well settled that the cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *In re Marriage of Turk*, 2014 IL 116730, ¶ 15. The statute's language is the best indication of the legislature's intent and must be given its plain, ordinary, and popularly understood meaning. *Id.*; *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). It is appropriate to consult a dictionary to determine a statutory term's plain and ordinary meaning. *People v. Perry*, 224 Ill. 2d 312, 330 (2007). When the statute's language is clear and unambiguous, we must apply it as written without resort to extrinsic aids or tools of interpretation. *Turk*, 2014 IL 116730, ¶ 15. A court should not consider the statute's words and phrases in isolation but instead should interpret each word and phrase in light of the statute as a whole. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26. Statutory interpretation is a question of law that we review *de novo*. *Citibank, N.A.*, 2017 IL 121634, ¶ 39.

¶ 28       The parties correctly note that the Act does not define the term "administrative civil money penalty proceeding." Both parties turned to Black's Law Dictionary's definition of the term "administrative proceeding": "[a] hearing, inquiry, investigation, or trial before an administrative agency, [usually] adjudicatory in nature but sometimes quasi-legislative." Black's Law Dictionary 54 (10th ed. 2014). Best Buy relies on the first half of the definition, arguing that the Department's audit was investigatory and the Board's review was an adversarial proceeding. Relators rely on the second half of the definition, arguing that an administrative proceeding, regardless of the form it takes, must be either adjudicatory in nature or quasi-legislative. Relators contend that the Department's audit along with the Board's informal review was neither. We agree with relators.

¶ 29       When relators added Best Buy as a defendant to the *qui tam* action, the Board was in process of reviewing the proposed liability, but the Department's audit had not yet been completed because no notice of tax liability had been issued to Best Buy. Until the Department completed its audit by issuing the statutory notice of final liability to Best Buy, there was no final assessment of tax due and, consequently, no determination subject to adjudication.

¶ 30       Although the Retailers' Occupation Tax Act establishes an administrative process that begins with the initiation of an audit and provides for an informal review of the proposed audit assessments, that process is not an administrative proceeding and does not implicate formal

---

[1]Relators filed a third amended complaint against the other named defendants, which is not the subject of this appeal, and had not yet been ruled upon when the trial court dismissed Best Buy from the *qui tam* action.

protest procedures. Importantly, the Board's informal review addressed the Department's notice of proposed, but not final, liability against Best Buy. The nature of the Board's review was only to reconsider the proposed assessment against Best Buy, and the Department did not present evidence supporting its proposed assessed liability. Moreover, the rules of evidence did not apply to Best Buy's in-person conference with the Board (86 Ill. Adm. Code 215.130(f) (2007)), lending support to the position that the Board's review was not adversarial. A taxpayer's formal appeal rights are not triggered until the Department issues a statutory notice, which had not yet issued here at the time relators joined Best Buy as a defendant. Once the Department issues a statutory notice, then a taxpayer may invoke administrative proceedings before an administrative law judge or, alternatively, pay under protest and file an action in the circuit court. *Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 545-46 (1983).

¶ 31    We must be mindful that the relevant statutory language refers to both a "civil suit" and "administrative civil money penalty proceeding" as matters sufficient to impose the government action bar. Reading "civil suit" and "administrative civil money penalty proceeding" together, along with the requirement that the State was already a party to either of those actions, we can easily ascertain that the legislature intended to bar *qui tam* actions that were already subject to an adversarial proceeding in which the State was a party. Although the Department initiated the audit of Best Buy and grants the Board power to review and consider a taxpayer's grievances concerning proposed audit assessments, neither aspect of the investigation of Best Buy's potential tax liability amounted to an adversarial proceeding. Rather, these phases are precursors to a future adversarial proceeding should the taxpayer not be satisfied with the outcome of the Board's review. It is the taxpayer's conduct in pursuing relief from the notice of tax liability (no longer a proposed liability) by requesting an administrative hearing or initiating a civil suit under the Protest Monies Act that triggers the Department's status as a party in an adversarial proceeding. A "party" is commonly understood to mean "[o]ne by or against whom a lawsuit is brought" (Black's Law Dictionary 1297 (10th ed. 2014)), and the Department and Best Buy only became parties and opponents in an adversarial proceeding when Best Buy filed its action under the Protest Monies Act, 10 months after it had been joined as a defendant in this case. In other words, at the time relators named Best Buy as a defendant, the Department had not yet issued a final tax liability subject to formal adversarial proceedings, and Best Buy had not yet taken any action to trigger the Department's status as a party in an adversarial proceeding.

¶ 32    Best Buy contends that, even if the Board's review was not an administrative civil money penalty proceeding, its protest monies action was one step in a continuous process (beginning with the Department's audit) that collectively qualifies as an administrative civil money penalty proceeding. Section 4(e)(3)'s language provides no support for Best Buy's position. Importantly, section 4(e)(3)'s language uses the present tense when it refers to "allegations or transactions which *are* the subject of a civil suit or an administrative civil money penalty proceeding in which the State *is already* a party." (Emphases added.) 740 ILCS 175/4(e)(3) (West 2014). Nothing in the statute's express language demonstrates that the legislature intended to bar a *qui tam* action based on the possibility that the State *may* be a party in a civil suit or administrative civil money penalty proceeding in the future. Likewise, the statute limits the government action bar to civil suits and administrative civil money penalty proceedings and does not include investigations or other steps leading to the eventual filing of either proceeding. Best Buy is attempting to expand the government action bar's applicability

beyond what is provided for in the statute, which, under the well-established canons of statutory interpretation, is not permissible. See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010) (it is improper to add provisions not found in a statute or to depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express in the statute). Although the Department's audit of Best Buy and the Board's review were steps in an administrative *process* and were investigatory in nature, they do not constitute steps in an administrative *proceeding* for purposes of the government action bar. Rather, steps in an administrative proceeding would include the filing of a complaint in the circuit court under the Protest Monies Act or requesting an administrative hearing, and neither occurred here before Best Buy was named as a defendant in relators' complaint.

¶ 33    Because the Department's audit and the Board's informal internal review of the proposed audit adjustments were not an administrative civil money penalty proceeding that the State was already a party to, the government action bar is not applicable to relators' *qui tam* action. For this reason, the trial court erred in granting Best Buy's section 2-619(a)(9) motion to dismiss.

¶ 34    Best Buy also contends that relators' *qui tam* action addressed the same subject as the Board's informal review and was "parasitic" because it relied on and used information derived from the Department's audit and the Board's review. But because the Department's audit and the Board's review of the proposed audit adjustment were not an administrative civil money penalty proceeding, Best Buy's contention is beside the point. Likewise, because this appeal involves a motion to dismiss on jurisdictional grounds addressing whether the government action bar precludes the *qui tam* action, we need not address Best Buy's contentions as to the merits of the allegations in the *qui tam* action that it erroneously treated retail appliance sales as construction contracts.

¶ 35                                    CONCLUSION

¶ 36    For these reasons, we reverse the trial court's dismissal of relators' *qui tam* complaint and remand for further proceedings consistent with this opinion.

¶ 37    Reversed and remanded.