# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Rivera v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283

---

| | |
|---|---|
| Appellate Court Caption | JOSE "JOE" RIVERA, Petitioner-Appellant, v. THE CITY OF CHICAGO ELECTORAL BOARD, LANGDON D. NEAL, Chairman, RICHARD A. COWEN, Commissioner, MARISEL A. HERNANDEZ, Commissioner, TIMOTHY J. RADDATZ, and GERALD J. HOLST, JR., Respondents-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-0283 |
| Filed | July 29, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where petitioner failed to strictly comply with the service requirements of section 10-10.1 of the Election Code, the trial court's dismissal of his petition for judicial review of the declaration that his candidacy for alderman was invalid was affirmed and his appeal to the appellate court was dismissed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2011-COEL-12; the Hon. Susan Fox Gillis, Judge, presiding. |
| Judgment | Order affirmed; appeal dismissed. |

Counsel on
Appeal

Andrew Finko, of Chicago, for appellant.

James M. Scanlon and Joan T. Agnew, both of James M. Scanlon & Associates, of Chicago, for appellee City of Chicago Electoral Board.

Thomas A. Jaconetty, of Chicago, for appellees Timothy J. Raddatz and Gerald J. Holst, Jr.

Panel

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Howse and Quinn concurred in the judgment and opinion.

**OPINION**

¶ 1    Following the declaration of the invalidity of his candidacy, petitioner-appellant Jose "Joe" Rivera (petitioner) moved for an expedited briefing schedule and decision related to the general municipal election for alderman of the 45th Ward of the City of Chicago to be held on February 22, 2011. His motion was denied as a practical matter due to insufficient time to address and resolve his appeal before the scheduled election. The cause has since been briefed for appeal by petitioner, as well as by respondents-appellees the City of Chicago Electoral Board (Board); Langdon D. Neal, chairman, Richard A. Cowen, commissioner, and Marisel A. Hernandez, commissioner (collectively, members); and Timothy J. Raddatz and Gerald J. Holst, Jr. (individually, or objectors). Upon review, we issue the instant order affirming the decision of the trial court and dismissing petitioner's appeal.

¶ 2                                    BACKGROUND

¶ 3    Petitioner filed nomination papers to become a candidate in said election. Raddatz and Holst filed objections to the validity of petitioner's candidacy and the cause proceeded before a hearing officer in December 2010 pursuant to an order from the Board. During this hearing, in addition to the matter at hand (the validity of his candidacy), petitioner filed multiple motions to strike. In them, he complained, in part, that the hearing officer initially defaulted objectors for failure to appear but then vacated that default when they eventually appeared following a delay, and that objectors were improperly represented by a nonattorney at the hearing (*i.e.*, a clerk for their attorney of record). After considering these motions, the hearing officer orally denied them, concluding that the delay in appearance was understandable due to special circumstances, and that the nonattorney had not provided any legal services but only obtained the briefing schedule on the motions. The hearing officer then took the case under advisement and, on December 22, 2010, submitted a

-2-

recommendation to the Board that the objections be sustained, that petitioner's candidacy be declared invalid, and that petitioner's name not be printed on the election ballot.

¶ 4        On January 7, 2011, the Board met to review the hearing officer's recommendations. Counsel for petitioner, as well as counsel for objectors, were present and argued at this meeting. At the conclusion of the argument, the Board verbally stated that it would affirm the hearing officer's recommendation. Later, on this same day, the Board issued its written decision, officially adopting the hearing officer's recommendation and sustaining the objections to petitioner's candidacy. It is unclear from the record which, if any, of the parties or their representatives were present at the time the Board issued its written decision.[1] On this same day, the Board sent a copy of its written decision by mail in a sealed envelope with postage prepaid to petitioner's counsel of record. In the decision, immediately after the signatures of the Board members who comprised the panel involved, it is stated:

> "**NOTICE: Pursuant to Section 10-10.1 of the Election Code (10 ILCS 5/10-10.1) a party aggrieved of this decision and seeking judicial review of this decision must file a petition for judicial review with the Clerk of the Circuit Court of Cook County within 5 days after service of the decision of the Electoral Board.**" (Emphasis in original.)

¶ 5        Petitioner admits, for the record, that he, via his counsel, received the Board's written decision on either January 10 or 11, 2011. On January 12, 2011, petitioner filed a petition for judicial review with the clerk of the circuit court of Cook County, arguing that the Board's decision should be reversed and attaching a copy of that decision. In his "Notice of Filing" accompanying the petition, petitioner stated that he served his petition upon the parties involved by "placing same into the US Postal Service mail receptacle in Chicago, Illinois at or before 5:00 pm on January 11, 2011." In his "Service List," petitioner listed the Board and its three members and stated that each was served "c/o: James Scanlon, General Counsel, 69 W. Washington St., 8th Floor, Chicago, Illinois 60602"; petitioner also listed objectors and stated that each was served "c/o: Thomas A. Jaconetty, Esq., Attorney for Objectors, 33 North La Salle Street, Suite 3300, Chicago, Illinois 60602."

¶ 6        Also on January 12, 2011, petitioner filed a "Notice of Emergency Motion" to set a hearing date on his petition for January 14, 2011. In an order, the trial court instructed the Board and its members to file their motion to dismiss on January 14, 2011, and told petitioner to submit his response via email to the court on January 17, 2011 (a court holiday), and file it on January 18, 2011. The court then set a hearing date for January 18, 2011, at 2 p.m.

¶ 7        In their motion to dismiss, the Board and its members argued that petitioner failed to effectuate proper service of his petition as required by section 10-10.1 of the Illinois Election Code (Code) (10 ILCS 5/10-10.1 (West 2010)), because he served their attorney and not them personally, and, thus, that the trial court lacked jurisdiction to hear the petition. Objectors, too, filed a motion to dismiss for lack of subject matter jurisdiction.

---

[1]Pursuant to the parties' discussion of this point in their briefs, there is a clear indication that one, more or all of them were absent at the time the Board reconvened on this day to issue its written decision.

¶ 8        On January 18, 2011, at 1:55 p.m. (immediately preceding the hearing), in addition to filing his response to the Board's motion to dismiss, petitioner filed a "Supplemental Certificate of Service and Corrected Notice of Filing–Corrected Certificate of Service." In this filing, petitioner "corrected" the date when he notified the parties that he filed his petition for judicial review with the court, stating it was January 12, 2011 and not January 11, 2011, as he originally claimed. He also included a "corrected" certificate of service, stating the he served the parties listed in his "Service List" by "certified mail–return receipt requested," as well as by "hand delivering copies of same" to them before 5 p.m. on January 12, 2011. Attached to this was a "Service List," identical to the original one petitioner filed with his petition, listing the Board and its members as served "c/o: James Scanlon" and objectors as served "c/o: Thomas A. Jaconetty, Esq." Petitioner further filed, at the same time, a "Supplemental Certificate of Service," certifying that he served objectors, each individually, with a copy of his petition by certified mail-return receipt requested on January 14, 2011.

¶ 9        Arguments were then heard before the trial court. At their conclusion, the court entered an order on January 18, 2011 granting both the Board's and objectors' motions to dismiss for the "reasons stated in open court, including improper service on the Board and [o]bjectors." Ultimately, the court held that it "lack[ed] subject-matter jurisdiction" over petitioner's cause.

¶ 10       Later that day, at 4:20 p.m., petitioner filed with the court a document titled "Section 10-10.1 Proof of Service." In it, petitioner stated that he served a copy of his petition "upon all Respondents by ***CERTIFIED MAIL–RETURN RECEIPT REQUESTED***" on January 18, 2011. (Emphasis in original.) However, the only "Respondents" he indicated were the Board and its members, not objectors. Petitioner listed the address for each as "69 W. Washington Street," and for the first time did not serve them "c/o: James Scanlon." Attached to this document were photocopies of four certified mail receipts, one for the Board and one for each member, all dated January 18, 2011.

¶ 11       Then, on January 24, 2011, petitioner filed another document titled "Section 10-10.1 Proof of Service" with the court. In this document, petitioner stated that he served a copy of his petition "upon all Respondents" by certified mail–return receipt requested "a third time, on January 18, 2011." Petitioner attached the return receipt cards for the Board, the three members and objector Raddatz; he did not list objector Holst nor did he include any receipt card from him.

¶ 12       On January 26, 2011, petitioner filed his Notice of Appeal with our court.

¶ 13                                ANALYSIS

¶ 14       On appeal, petitioner makes several contentions. First, he claims that sections 10-10 and 10-10.1 of the Code are unconstitutional because their short time frames deprive aggrieved parties of meaningful judicial review and violate equal protection. He then asserts that he in fact timely filed his petition and complied with the service requirements of the Code. Finally, he urges that, if we were to find that the trial court did, indeed, have subject matter jurisdiction over his cause, we should also reverse on the merits to find that the Board's decision here was improper. We disagree with all his contentions.

-4-

¶ 15 We must begin by noting that petitioner's cause is technically moot. The existence of an actual case or controversy is essential to our appellate jurisdiction. See *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003); *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997) (the function of our court is to decide controverted issues). Thus, a court of review will not generally decide cases that are moot. See *Andrea F.*, 208 Ill. 2d at 156. A case is moot when it presents no actual controversy or when the legal issue involved has ceased to exist. See *Andrea F.*, 208 Ill. 2d at 156; *Richardson*, 179 Ill. 2d at 256. The test to determine mootness is whether the issue involved in the trial court no longer exists because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complainant. See *Andrea F.*, 208 Ill. 2d at 156; *Richardson*, 179 Ill. 2d at 256; see also *Nelson v. Qualkinbush*, 389 Ill. App. 3d 79, 84 (2009) (discussing judicial review of election matter). Where the issue before the court is moot, the pending appeal is generally dismissed. See *Andrea F.*, 208 Ill. 2d at 156; *Nelson*, 389 Ill. App. 3d at 84; see also *Richardson*, 179 Ill. 2d at 256.

¶ 16 In the instant cause, the relief petitioner seeks is to have his name placed on the ballot as a candidate for office of alderman of the 45th Ward for the municipal general election to be held on February 22, 2011. However, that election has passed. So, too, then, has the issue that was involved in the trial court; it has ceased to exist. Due to this intervening event, it is simply impossible for us to grant the relief petitioner requests. As such, and without the existence of an actual controversy, the instant cause is technically moot. See, *e.g.*, *Richardson*, 179 Ill. 2d at 256 (appeal in election case asserting constitutional vagueness of statute dismissed as moot where, in part, election had already passed).

¶ 17 However, notwithstanding these general mootness rules, a reviewing court may address an otherwise moot issue pursuant to one of several exceptions: the public-interest exception, the capable-of-repetition exception, or the collateral-consequences exception. See *In re Alfred H.H.*, 233 Ill. 2d 345, 355-62 (2009). Regarding the public-interest exception, which is particularly applicable to election cases, mootness will be excused if there is a substantially public nature to the question involved, there is a need for an authoritative determination that will help guide our public officers, and there is a likelihood that the question will recur. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 208 (2008).

¶ 18 We find that the instant cause meets the public-interest exception to the mootness rules. Clearly, it involves questions of election law, "which inherently is a matter of public concern." *Cinkus*, 228 Ill. 2d at 208. And, the issue is likely to recur in future municipal elections. The sections of the Code in question–particularly, section 10-10.1–involve the most basic tenets of the specific legal procedure that must be followed to obtain review from the Board: the time allowed in which to file a petition for judicial review and the steps required to effectuate service. Therefore, an authoritative determination on these issues is desirable to guide public officers. Accordingly, we decline to dismiss the instant appeal as moot. See, *e.g.*, *Cinkus*, 228 Ill. 2d at 208 (wherein reviewing court, pursuant to public-interest exception, chose to address election case that was otherwise technically moot because time for election had already come and gone).

¶ 19 Turning to the issues before us, then, we note that all the parties agree as to the

appropriate standard of review which we must employ. As noted earlier, petitioner appeals the trial court's grant of the Board's and objectors' motions to dismiss for lack of subject matter jurisdiction. An appeal from the grant of a motion to dismiss is reviewed *de novo*. See *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006) (motion to dismiss based on defect is reviewed *de novo*); accord *Krauss v. Board of Election Commissioners*, 287 Ill. App. 3d 981, 984 (1997). More specifically, whether a court has subject matter jurisdiction over issues resulting from a petitioner's alleged failure to comply with the Code is a question of law that, likewise, requires *de novo* review. See *Nelson*, 389 Ill. App. 3d at 83. And, petitioner here asks us to interpret section 10-10.1 of the Code–again, requiring *de novo* review. See *Cinkus*, 228 Ill. 2d at 210 (interpretation of meaning of statutory language mandates independent review by court).

¶ 20    Illinois courts do not have general jurisdiction over election cases, but may only review them pursuant to statute, namely, sections 10-10 and 10-10.1 of the Code. See *Nelson*, 389 Ill. App. 3d at 86; *Hough v. Will County Board of Elections*, 338 Ill. App. 3d 1092, 1094 (2003); *Bill v. Education Officers Electoral Board of Community Consolidated School District No. 181*, 299 Ill. App. 3d 548, 551 (1998) (citing *Allord v. Municipal Officers Electoral Board*, 288 Ill. App. 3d 897, 900 (1997)). Accordingly, the requirements mandated upon the parties as provided in these sections are jurisdictional requirements that must be followed. See *Nelson*, 389 Ill. App. 3d at 86; *Hough*, 338 Ill. App. 3d at 1094. "The '[f]ailure of a party to comply with any of the *** requirements when appealing [a Board] decision invites dismissal via section 2-619 (735 ILCS 5/2-619 [(West 2010) of the Illinois Code of Civil Procedure]), for lack of subject matter jurisdiction.' " *Hough*, 338 Ill. App. 3d at 1094 (quoting *Bill*, 299 Ill. App. 3d at 551-52); accord *Nelson*, 389 Ill. App. 3d at 86-87. Therefore, a motion to dismiss must be granted "if strict compliance with section 10-10.1 [of the Code] is not demonstrated in the record." *Nelson*, 389 Ill. App. 3d at 87 ("the rule of strict compliance with the *** Code to establish subject matter jurisdiction is abundantly clear"); *Rita v. Mayden*, 364 Ill. App. 3d 913, 917 (2006) (Illinois courts have no jurisdiction over election cases in which party seeking review of Board's decision did not strictly comply with Code procedure).

¶ 21    Sections 10-10 and 10-10.1 of the Code were amended in July 2010. Section 10-10, which deals with what the Board must do upon a determination regarding the validity of a petitioner's candidacy, states, in pertinent part:

> "The [Board] must state its findings in writing and must state in writing which objections, if any, it has sustained. A copy of the decision shall be served upon the parties to the proceedings in open proceedings before the [Board]. *If a party does not appear for receipt of the decision, the decision shall be deemed to have been served on the absent party* on the date when a copy of the decision is personally delivered or *on the date when a copy of the decision is deposited in the United States mail*, in a sealed envelope or package, with postage prepaid, addressed to each party affected by the decision or to such party's attorney of record, if any, at the address on record for such person in the files of the [Board]." (Emphasis added.) 10 ILCS 5/10-10 (West 2010).

Section 10-10.1 allows a potential candidate, such as petitioner here, who was aggrieved by

a decision of the Board and removed or prohibited from having his name placed on a ballot to secure judicial review of that decision. That section states, in pertinent part:

> "The party seeking judicial review must file a petition with the clerk of the court and *must serve a copy of the petition upon the [Board] and other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the [Board] as provided in Section 10-10.* The petition shall contain a brief statement of the reasons why the decision of the [B]oard should be reversed. The petitioner shall file proof of service with the clerk of the court." (Emphasis added.) 10 ILCS 5/10-10.1 (West 2010).

¶ 22    Clearly, then, the Code mandates that, once the Board serves its written decision upon the parties either orally at a hearing (if they are present), by personal delivery or by depositing it in the mail, a petitioner must satisfy "four explicit prerequisites to subject matter jurisdiction" and obtain judicial review of that decision. *Nelson*, 389 Ill. App. 3d at 86. Specifically, he must (1) file his challenging petition with the clerk of the court within five days after the Board's service of its decision; (2) serve copies of the petition on the Board and the other parties to the proceedings by registered or certified mail within five days after the Board's service of its decision; (3) state in that petition why the Board's decision should be reversed; and (4) file proof of service with the clerk of the court. See 10 ILCS 5/10-10, 10-10.1 (West 2010); see, *e.g.*, *Nelson*, 389 Ill. App. 3d at 86; accord *Hough*, 338 Ill. App. 3d at 1094 (noting that these four elements were the same under the preamended version of Code; only time factor was changed, narrowing a petitioner's time for filing and service from 10 days to 5 days); *Bill*, 299 Ill. App. 3d at 551 (these are "four distinct requirements that must be complied with in order to properly confer jurisdiction upon" our courts).

¶ 23    There is no dispute in the instant cause that petitioner satisfied the first, third and fourth requirements of section 10-10.1. That is, the record demonstrates that he filed his petition for judicial review of the Board's decision with the clerk of the court within five days after the Board's service was complete, he stated in that petition the reasons why he believed the Board's decision should be reversed to allow his name to appear on the ballot, and he filed proof of service with the clerk of the court. The issue in this cause focuses instead on the second requirement of service, pursuant to which petitioner was required to serve copies of the petition on the Board and the other parties to the proceedings by registered or certified mail within five days after the Board's service of its decision upon him. To properly obtain review of his cause, then, and in accordance with the well-established rules of strict compliance with the Code, petitioner must have strictly followed the service requirement of section 10-10.1, which prescribes who must be served, how they must be served and when they must be served with his petition for judicial review.

¶ 24    First, with respect to who must be served, section 10-10.1 requires a petitioner to serve a copy of his petition upon those who are indispensable parties to his cause, namely, "upon the [Board] and other parties to the proceeding[s]." 10 ILCS 5/10-10.1 (West 2010); see *Allord*, 288 Ill. App. 3d at 902 (service must occur upon all "necessary parties"). Clearly, from the statutory language, this includes the Board itself, as the entity that issued the decision which the petitioner seeks to challenge. See 10 ILCS 5/10-10.1 (West 2010);

*Nelson*, 389 Ill. App. 3d at 87 ("[t]here can be no doubt that section 10-10.1 requires service of the Board"); *Allord*, 288 Ill. App. 3d at 901-02; *Russ v. Hoffman*, 288 Ill. App. 3d 281, 284 (1997) (failure to serve board with petition deprives courts of subject matter jurisdiction to review petition). However, this also includes those individual Board members who participated in the decision, as they were the ones who actually reached the decision of the Board. See *Nelson*, 389 Ill. App. 3d at 87 ("it follows that the Code requires that service must be effected on *both* the Board as the entity making the decision and its members who voted on the decision" (emphasis in original)); *Bill*, 299 Ill. App. 3d at 552-53 (individual members of board are necessary parties who must be served under section 10-10.1, since they render the decision that determines the rights and liabilities of the parties involved in this administrative adjudication; failure to serve them results in loss of subject matter jurisdiction upon courts); accord *Russ*, 288 Ill. App. 3d at 284 (service must be made upon individual board members, as they are necessary parties). And, the petitioner must also serve the objectors to his candidacy, as they, too, are indispensable parties to the litigation. See *Hough*, 338 Ill. App. 3d at 1094 (those who contest candidacy comprise "other parties to the proceedings" and must be promptly served under section 10-10.1).[2]

¶ 25    Next, regarding how these necessary parties must be served, section 10-10.1 mandates that petitioner must serve a copy of his petition upon them "by registered or certified mail." 10 ILCS 5/10-10.1 (West 2010). Moreover, this service must be done personally. See *Hough*, 338 Ill. App. 3d at 1094. Specifically, our courts have made explicitly clear that a petitioner's service on the attorneys who represent the necessary parties involved is wholly impermissible; it is simply "not sufficient for purposes of meeting the requirements of the Code" and will result in the dismissal of the cause for lack of jurisdiction. *Nelson*, 389 Ill. App. 3d at 87 (service on attorney for board did not satisfy service requirements of section 10-10.1 and, thus, dismissal of cause was proper as courts were deprived of subject matter jurisdiction); accord *Hough*, 338 Ill. App. 3d at 1094 (the petitioner's service on the objectors' attorney and not on the objectors themselves did not comply with statutory requirement and resulted in dismissal of appeal); *Allord*, 288 Ill. App. 3d at 902 (that candidates' attorney was served, rather than candidates personally, "is without significance" and review of appeal was precluded).

¶ 26    Finally, in addition to who and how, section 10-10.1 prescribes when the petitioner must serve the necessary parties. The section clearly states that this must be done "within 5 days after service of the decision of the [Board] as provided in Section 10-10." 10 ILCS 5/10-10.1 (West 2010). Thus, once the Board has served the petitioner with its written hearing decision declaring his candidacy invalid via section 10-10, namely, by either giving it to him in the open proceedings that led to the decision or, if he is not present, by personally delivering it to him or depositing a copy of it in the mail addressed to him or his attorney of record (see 10 ILCS 5/10-10 (West 2010)), the burden falls upon the petitioner to serve the necessary parties with his petition for judicial review within five days from that date and in accordance

---

[2]Another necessary party required to be served would be the candidate himself, were, for example, an objector seeking judicial review of a board decision. See *Allord*, 288 Ill. App. 3d at 902-03.

with the remaining requirements of section 10-10.1. See 10 ILCS 5/10-10.1 (West 2010).

¶ 27 Again, we must emphasize that the requirements imposed by the Code upon a petitioner seeking review of a Board's decision, particularly regarding filing and service as dictated in section 10-10.1, are jurisdictional and must be strictly followed or else no court may review his petition due to a lack of subject matter jurisdiction. See *Nelson*, 389 Ill. App. 3d at 86-87; *Hough*, 338 Ill. App. 3d at 1094; *Bill*, 299 Ill. App. 3d at 551-52; *Rita*, 364 Ill. App. 3d at 917.

¶ 28 In the instant cause, the record reveals that the Board met on January 7, 2011 to review and consider the hearing officer's recommended decision that petitioner's name not be printed on the ballot. Both petitioner and objectors were present and argued before the Board at this hearing. Petitioner admits that, at the conclusion of this hearing, the Board gave a verbal decision in the matter–it announced during the open proceedings that it would be affirming the hearing officer's recommendation that petitioner's candidacy be declared invalid. What can be gleaned next from the record is that the Board adjourned so it could transcribe its decision in the matter in writing, as required by section 10-10 of the Code. See 10 ILCS 5/10-10 (West 2010) ("[t]he [Board] must state its findings in writing"). When the Board reconvened later on this same day to issue that written decision officially declaring petitioner's candidacy invalid, it was unclear which, if any, of the parties or their representatives were present to receive it. Therefore, with some or all of the parties absent from this portion of the open proceedings, the Board chose, as per its authority under section 10-10, to serve petitioner with a copy of its decision by depositing it in the mail addressed to his counsel of record. See 10 ILCS 5/10-10 (West 2010) ("[i]f a party does not appear for receipt of the decision, the decision shall be deemed to have been served on the absent party *** on the date when a copy of the decision is deposited in the United States mail *** addressed to each party *** or to such party's attorney of record"). The Board mailed its written decision to petitioner's attorney on the same date it concluded the hearing. Accordingly, the record clearly establishes that petitioner was served with the Board's decision on this date–January 7, 2011.

¶ 29 Petitioner admits in his brief on appeal that his attorney received the Board's written decision in the mail on either January 10 or 11, 2011. Written at the end of the decision, following the Board members' signatures, was the following reminder to petitioner:

> "**NOTICE: Pursuant to Section 10-10.1 of the Election Code (10 ILCS 5/10-10.1) a party aggrieved of this decision and seeking judicial review of this decision must file a petition for judicial review with the Clerk of the Circuit Court of Cook County within 5 days after service of the decision of the Electoral Board.**"
> (Emphasis in original.)

¶ 30 Accordingly, under the time provision of section 10-10.1, petitioner had five days from January 7, 2011 to file his petition for judicial review with the clerk of the court and to serve all necessary parties with it. Indeed, the record reveals that petitioner timely filed his petition. On January 12, 2011, petitioner filed it with the clerk of the court, arguing why the Board's decision should be reversed. See 10 ILCS 5/10-10.1 (West 2010) (petitioner must state reasons for reversal). To his petition, he attached a copy of the Board's decision–clearly showing the date he was served (January 7, 2011) and the timeliness of his filing (January

12, 2011). In addition, and also as required by section 10-10.1, petitioner filed proof of service with the clerk of the court. See 10 ILCS 5/10-10.1 (West 2010).

¶ 31    However, in his proof of service, petitioner stated that he served his petition upon the parties involved by "placing same into the US Postal Service mail receptacle in Chicago, Illinois at or before 5:00 pm on January 11, 2011." In his service list, regarding the "parties involved," petitioner separately listed the Board and its three members, but stated under each that he served them "c/o: James Scanlon, General Counsel, 69 W. Washington St., 8th Floor, Chicago, IL 60602." He then listed objectors Raddatz and Holst together and stated that he served them "c/o: Thomas A. Jaconetty, Esq., Attorney for Objectors, 33 North La Salle Street, Suite 3300, Chicago, Illinois 60602."

¶ 32    From our review of the record, it is obvious that, while petitioner timely filed his petition for judicial review and even complied with three of the four mandatory requirements for such review under section 10-10.1 of the Code (*i.e.*, timely filing, stating reasons for reversal, and filing proof of service with the court), he did not comply with the service requirement.

¶ 33    As we discussed at length above, to obtain review of his petition, a petitioner must serve the proper parties within the proper time and in the proper manner dictated by section 10-10.1. Petitioner here named all the necessary parties to this litigation: the Board, its individual members and both objectors. And, he stated that he mailed his petition to them by January 11, 2010, within the five-day service time frame set by section 10-10.1. Yet, he failed to properly effectuate service in two critical, and mandatory, ways. First, petitioner stated only that he placed a copy of his petition "into [a] US Postal Service mail receptacle" in order to serve the parties. However, section 10-10.1 requires that petitioner send the parties a copy of his petition "by registered or certified mail." Clearly, then, petitioner did not properly serve the Board, its members or objectors when he failed to do this. Second, petitioner also missed the mark by failing to serve the parties personally. Again, petitioner's service list shows that he served "James Scanlon, General Counsel"–the attorney for the Board and its members–rather than these parties individually. Likewise, he served Thomas Jaconetty, "Attorney for Objectors," rather than Raddatz and Holst themselves. Petitioner served these indispensable parties "care of" their attorneys at the addresses of their attorneys' offices; nowhere in his service list did petitioner list the personal (or even business) addresses of any of the parties. As we noted earlier, in the context of election cases, service to a party's attorney, rather than to a party personally, is entirely improper under the Code and directly violates section 10-10.1. See *Nelson*, 389 Ill. App. 3d at 87; *Hough*, 338 Ill. App. 3d at 1094; *Allord*, 288 Ill. App. 3d at 902.

¶ 34    In an effort to, perhaps, clarify his actions, petitioner filed multiple documents on January 18, 2011, immediately before, as well as after, the trial court's hearing of his matter. However, none of these save his claim. Before the hearing, he filed a document entitled "Supplemental Certificate of Service and Corrected Notice of Filing–Corrected Certificate of Service." In it, he stated that he mailed his petition to the parties on January 12, 2011, not January 11, 2011 as he stated originally in his proof of service when he filed his petition with the court. This, technically, is irrelevant–as we have noted, the five-day time period for service under section 10-10.1 elapsed on January 12, 2011; so, whether petitioner mailed his

petition on January 11 or one day later, he was still within the proper time limit. Next, petitioner included a "corrected" certificate of service, stating that he served the parties by "certified mail–return receipt requested." However, the service list he attached to this was identical to the original one he filed with his petition, listing that he served the Board and its members "c/o: James Scanlon, General Counsel" and objectors "c/o: Thomas Jaconetty, Esq., Attorney for Objectors." Again, service to a necessary party's attorney in an election case does not equate to proper service of the necessary party itself under section 10-10.1. And, immediately before his hearing, petitioner filed a "Supplemental Certificate of Service," stating that he served objectors, each individually, with a copy of his petition by certified mail-return receipt requested "on January 14, 2011." While in this document, petitioner finally states he served objectors not via their attorney but, rather, personally at their own addresses, and that he did so by certified mail–return receipt requested, he clearly did not do so by January 12, 2011, within the five-day time limit prescribed by section 10-10.1; moreover, he did not mention any such similar service upon the Board or its members.

¶ 35    After the trial court had found it lacked subject matter jurisdiction due to petitioner's improper service upon the parties, petitioner continued to file more documents in his effort to effectuate proper service. However, just as those he filed before his hearing, none of these even remotely indicate that he complied with the service requirements of section 10-10.1. His first posthearing document was entitled "Section 10-10.1 Proof of Service." In this, he stated that he served a copy of his petition upon all the parties by certified mail–return receipt requested "on January 18, 2011" (the day of the hearing), and attached photocopies of four certified mail receipts all dated January 18, 2011. For the first time, the service list indicated that petitioner served the Board and each member individually, and not "in care of" their attorney. However, again, petitioner was outside the five-day time limit for service when he did this. Petitioner's second, and last, posthearing filing came on January 24, 2011, several days after the trial court's decision. Identically entitled "Section 10-10.1 Proof of Service," he stated that he served a copy of his petition "upon all Respondents" by certified mail–return receipt requested "a third time, on January 18, 2011." This time, while he attached return receipt cards for the Board, the members and objector Raddatz, he did not attach a card for objector Holst or even named him as having been served. Again, then, petitioner failed to complete proper service upon all the necessary parties via certified mail within the five-day time frame of section 10-10.1.

¶ 36    Accordingly, precisely due to petitioner's failure to comply with the strict service requirements of the Code regarding time and method of service, the trial court did not have subject matter jurisdiction over his petition for judicial review and, likewise, we do not have similar jurisdiction to entertain his appeal.

¶ 37    Petitioner presents a wide array of claims on appeal which he believes entitles the merits of his cause to be reviewed. We find that none of these, however, can effectuate this in light of the rules we have discussed and the record before us.

¶ 38    Petitioner's first and main argument is that the time for filing his petition for judicial review did not begin to run on January 7, 2011, the date the Board deposited its written decision in the mail, but, rather, on the date he received it, which he states was January 10 or 11, 2011. Pursuant to this claim, petitioner asserts that his five-day window to file and

serve his petition under section 10-10.1 did not expire, then, until January 18, 2011, when the trial court reopened following a weekend and a Monday holiday. Thus, he claims that his additional prehearing and posthearing filings regarding service should save his petition for review. He also blasts the Board as being "delinquent" for failing to provide proof of service of its decision and for failing to "adhere to its custom and practice of serving documents by fax or e-mail delivery."

¶ 39    Petitioner's argument is wholly unsupported by any case law or legal precedent. Indeed, he presents us with none. To the contrary, sections 10-10 and 10-10.1 are plain, ordinary and unambiguous. If a party is not present at the open proceedings when the Board issues its written decision, the Board is permitted, within its statutory purview, to either personally deliver its decision or mail that decision to the party or his attorney of record. Under section 10-10, if the Board chooses to mail its decision, "the decision shall be deemed to have been served *** on the date when" the Board deposits a copy of it "in the United States mail, in a sealed envelope or package, with postage prepaid." 10 ILCS 5/10-10 (West 2010). And, under section 10-10.1, it is "within 5 days after service of the decision" by the Board in which petitioner must file his petition for judicial review and properly serve it upon the necessary parties. 10 ILCS 5/10-10.1 (West 2010). Thus, the time frame and the requirements upon the Board prescribed by the Code are unmistakably clear: time began to run on the day the Board mailed its decision (January 7, 2011), not on the day petitioner received it, and there is no requirement upon the Board to file any sort of proof of service with respect to this mailing or to perfect service by any means other than depositing it in the mail, such as by fax or e-mail. See, *e.g.*, *Land v. Board of Education*, 202 Ill. 2d 414, 421-22 (2002) (where the statutory language is plain, ordinary and unambiguous, we are bound to enforce the law as written and may not resort to other tools of statutory construction).

¶ 40    Next, petitioner claims that he "substantially" complied with the service requirements of section 10-10.1 by serving the parties' attorneys by January 12, 2011, within the five-day statutory time limit. He further attempts to distinguish several cases which we have highlighted herein. Again, petitioner's claim cannot stand. We have already discussed at length that strict compliance with the Code is required; this rule has been repeatedly tested and is now well established. See *Nelson*, 389 Ill. App. 3d at 86-87; *Hough*, 338 Ill. App. 3d at 1094; *Bill*, 299 Ill. App. 3d at 551-52; *Rita*, 364 Ill. App. 3d at 917. The burden was entirely on petitioner to meet every mandate of the Code in order to secure review of his petition. See *Bill*, 299 Ill. App. 3d at 553 ("[A]ppellants are well advised to serve and notify all *** necessary parties in order to perfect their appeal. Failure to exercise abundant caution in this matter compels the termination of an appellant's case even before it has begun. Such is the unfortunate consequence" of this failure to strictly comply with the Code.). One of these requirements is the personal, individual service of all necessary parties–not their attorneys. See *Nelson*, 389 Ill. App. 3d at 87; *Hough*, 338 Ill. App. 3d at 1094; *Allord*, 288 Ill. App. 3d at 902. Thus, that petitioner may have served the attorneys for the Board, its members and objectors with his petition by January 12, 2011 is, at best, wholly irrelevant and, at worst, wholly impermissible. The undeniable fact remains that he failed to timely serve these parties personally.

¶ 41    Petitioner's last argument is that section 10-10.1 of the Code is unconstitutional because

the five-day time period to file and serve a petition for judicial review of a Board's decision is too short. He further insists that the section violates due process and equal protection, and cites the Administrative Review Law (735 ILCS 5/3-103 (West 2010)) and *Chin v. Department of Public Aid*, 78 Ill. App. 3d 1137 (1979), while advocating for the imposition of a longer statutory time period.

¶ 42    This argument is invalid for several reasons. First, petitioner has no standing to challenge the constitutionality of the filing portion of section 10-10.1. A party has standing to challenge the constitutionality of a statute only when he has suffered under it. See *In re Veronica C.*, 239 Ill. 2d 134, 150 (2010) (party lacked standing to challenge constitutionality of statute because she was not adversely affected by its operation); accord *Cwik v. Giannoulias*, 237 Ill. 2d 409, 423 (2010) (party has standing to challenge constitutionality of statute only when it negatively impacts his own rights). Here, the record establishes that petitioner timely filed his petition for judicial review under section 10-10.1, when he did so with the court on January 12, 2011. Moreover, as we have discussed, his petition was not only timely filed, but also properly included, as per the statute's mandate, a brief statement of the reasons why the Board's decision should be reversed and proof of service filed with the court. Clearly, petitioner strictly complied with this portion of section 10-10.1 and was not aggrieved by it in any way.

¶ 43    We consider that petitioner might have standing to challenge the service portion of section 10-10.1. It was his errors in relationship to this portion that divested the court of subject matter jurisdiction. However, his assertions that the Administrative Review Law should control this portion of the Code to afford more time for service and his reliance on *Chin* are completely misplaced.

¶ 44    We begin by reiterating the guiding principles of our laws regarding statutory interpretation. A statute is presumed constitutional, and courts must construe a statute so as to uphold its constitutionality when it is reasonably possible to do so. See *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 340 (2010). The party challenging the statute bears the burden of clearly proving its invalidity and establishing a constitutional violation. See *Irwin Industrial*, 238 Ill. 2d at 340.

¶ 45    Arguments similar to petitioner's that the Administrative Review Law should somehow control the provisions of the Code have already been addressed by our courts. Essentially, petitioner here argues that, since the Administrative Review Law allows 35 days for aggrieved parties to file their petitions for judicial review (see 735 ILCS 5/3-103 (West 2010)), the Code must follow suit in order to protect against due process and equal protection violations. However, our courts have specifically examined the possible application of the Administrative Review Law to the Code and concluded that in only one instance does it apply: with respect to section 10-10.1 of the Code, where a party is aggrieved by a Board decision regarding section 18-120 of the Property Tax Code (35 ILCS 200/18-120 (West 2010)). See *Bill*, 299 Ill. App. 3d at 554-55; see, *e.g.*, *Nelson*, 389 Ill. App. 3d at 88. Only then does the Code refer the party to the time and procedures prescribed by the Administrative Review Law. See *Bill*, 299 Ill. App. 3d at 554-55. Specifically, "[i]n examining section 10-10.1 of the Code, there exists no similar express language indicating that the Administrative Review Law should apply." *Bill*, 299 Ill. App. 3d at 554. To the

contrary, our courts have consistently held that "the Administrative Review Law will not dictate what procedural requirements must be followed in order to appeal a decision rendered by the [Board]." *Bill*, 299 Ill. App. 3d at 555; accord *Nelson*, 389 Ill. App. 3d at 88 (The Administrative Review Law " 'has no direct bearing upon the clearly drawn procedural mechanisms that must be followed when a[ Board] decision is appealed under [section 10-10.1].' *Bill*, 299 Ill. App. 3d at 556.").

¶ 46    Finally, *Chin* does not support petitioner's arguments. Petitioner states that *Chin* stands for the proposition that "at least seven days after actual delivery of an administrative agency decision, or nine days after mail delivery," are necessary for an aggrieved party to effectuate his rights. This is totally incorrect, and *Chin* is entirely distinguishable from the instant cause. First, *Chin* involved the application of provisions of the Public Aid Code and the Administrative Review Law; nowhere was the Code involved. See *Chin*, 78 Ill. App. 3d at 1139. Moreover, *Chin* actually supports our findings, rather than petitioner's, regarding when service is effectuated. That is, the *Chin* court reviewed an administrative decision which terminated a doctor's participation in a medical assistance program. One of the issues raised before the court was when the 35-day time period for filing a complaint under the Administrative Review Law, which was the applicable statute, began to run. The *Chin* court noted that section 4 of the then-current version of the Administrative Review Law stated that "a decision shall be deemed to have been served either when personally delivered or when deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected thereby at his last known residence or place of business." (Internal quotation marks omitted.) *Chin*, 78 Ill. App. 3d at 1139. The *Chin* court ultimately determined that this plain and unambiguous statutory language made clear that the time period began to run when the decision was deposited in the mail and not, as the plaintiff insisted, when he received the decision. See *Chin*, 78 Ill. App. 3d at 1139-40 (citing with approval this same conclusion as found in *Thompson v. Illinois Civil Service Comm'n*, 63 Ill. App. 3d 153 (1978)). Finally, the *Chin* court also address the plaintiff's insistence that his constitutional rights were violated by such a reading of the service requirement. It concluded that his argument failed. Examining other cases holding that shorter time periods for filing (for example, seven and nine days) were constitutionally valid, the *Chin* court found the 35-day period constitutional as well, and concluded that as long as the party seeking review receives notice within the statutory time period, that period should be upheld. See *Chin*, 78 Ill. App. 3d at 1140-41.

¶ 47    Thus, it is apparent that, not only did *Chin* not involve the Code, but it also presents itself as inherently contradictory to petitioner's arguments here. The applicable language regarding service in *Chin* is almost identical to the language regarding service in section 10-10.1 of the Code, which predominates this cause. Just as the *Chin* court found from this language that service begins to run on the date a decision is placed in the mail and not from when it is received, we, too, find that service here began to run on the date when the Board placed its decision in the mail on January 7, 2011, and not from when petitioner received it on January 10 or 11, 2011. And, any allegation that his constitutional rights are somehow violated by this interpretation is meritless. Petitioner received notice of the Board's decision, he had time to file and serve his petition for judicial review within the statutory five-day time period of section 10-10.1, and he timely filed it and (attempted to) served it. He simply did not carry

-14-

through his burden by completing proper service in the manner prescribed by section 10-10.1 within the time period as well, which required certified mail and service upon the necessary parties individually.

¶ 48 Ultimately, petitioner's failures in strictly following the service requirements of section 10-10.1 of the Code divested the trial court of subject matter jurisdiction to consider his petition for judicial review of the Board's decision to invalidate his candidacy and bar his name from appearing on the ballot. As the trial court did not have jurisdiction over the matter, we, too, lack jurisdiction to review the merits of his appeal.[3] Therefore, we hold that the trial court properly granted the Board's and objectors' motions to dismiss petitioner's cause, and we must dismiss the instant appeal.

¶ 49                                     CONCLUSION

¶ 50 Accordingly, for all the foregoing reasons, we affirm the order of the trial court and dismiss the instant appeal.

¶ 51 Order affirmed; appeal dismissed.

---

[3]Accordingly, we do not consider petitioner's substantive claims, namely, that the hearing officer improperly vacated its default order when objectors initially failed to appear before him and that the presence of objectors' counsel's nonattorney clerical legal assistant before the hearing officer violated certain rules concerning the unauthorized practice of law.