2015 IL App (1st) 140339-B
Nos. 1-14-0339 & 1-14-0340 (Cons.)

THIRD DIVISION
September 30, 2015

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| McSTEPHEN O. A. "MAX" SOLOMON, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | Nos. 14 COEL 002 |
| | ) | 14 COEL 003 |
| BENJAMIN RAMSEY, AL RILEY, | ) | |
| STATE OFFICERS ELECTORAL BOARD, | ) | |
| BRYAN A. SCHNEIDER, JUDITH C. RICE, | ) | The Honorable |
| WILLIAM A. McGUFFAGE, ERNEST L. | ) | James A. Zafiratos, |
| GOWEN, BETTY J. COFFRIN, HAROLD | ) | Judge Presiding. |
| D. BYERS, CHARLES W. SCHOLZ | ) | |
| and JESSE R. SMART, Chairman, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Mason and Justice Fitzgerald Smith concurred in the judgment and
opinion.

**OPINION**

¶ 1 This case arises from the nominating petition objection process for the March 18, 2014

primary election for the Democratic Party's nomination for the office of Representative in the

Illinois General Assembly for the 38th District. Following decisions of the State Officers

Electoral Board (Electoral Board or Board) to remove petitioner McStephen O. A. "Max"

Solomon (Solomon or petitioner), from the ballot, and to allow the incumbent candidate's name

to remain on the ballot, Solomon filed petitions for judicial review in the circuit court. The circuit court, however, dismissed his petitions for judicial review for lack of subject matter jurisdiction. Solomon contests the circuit court's ruling on appeal. On March 4, 2014, this court, abiding by the principle of *stare decisis*, followed First District precedent and filed an opinion upholding the circuit court's dismissal. Thereafter, on March 25, 2015, the Illinois Supreme Court issued a supervisory order directing this court to vacate our opinion and reconsider Solomon's claims in light of its recent decision in *Bettis v. Marsaglia*, 2014 IL 117050, to determine whether a different result is warranted. Upon reconsideration, we now reverse the judgment of the circuit court.

¶ 2                                                      BACKGROUND

¶ 3             On November 25, 2013, Solomon filed nomination papers to seek the Democratic nomination for the office of Representative in the General Assembly from the 38th Representative District in the upcoming March 18, 2014, primary election. In an effort to seek reelection, respondent Al Riley, the incumbent, also filed nomination papers. Thereafter, on December 5, 2013, Solomon filed an objection to Riley's nomination papers, arguing that the incumbent's name should be removed from the ballot because he filed signatures in excess of the statutory maximum. On December 9, 2013, an objection to Solomon's nomination papers was filed by respondent Benjamin Ramsey. The basis for the objection was Ramsey's assertion that Solomon failed to obtain the requisite number of minimum signatures to qualify for the ballot.

¶ 4             After receiving both objections, the Electoral Board sent Solomon two letters, dated December 5, 2013, and December 9, 2013, respectively, notifying him that it would be meeting to consider both objections. The letterheads of both letters identified the individual board members as: "Jesse R. Smart, Chairman, Charles W. Scholz, Vice President, Harold D. Byers,

Betty J. Coffrin, Ernest L. Gowen, William A. McGuffage, Judith C. Rice, Bryan A. Schneider."

Unbeknownst to Solomon, the letterhead was outdated, as it included the name of former Board

member, Judith C. Rice, instead of current Board member Cassandra B. Watson. Watson had

replaced Rice as a Board member on July 1, 2013.

¶ 5       On December 17, 2013, the Board presided over hearings to determine the validity of

both objections. Solomon ultimately lost both decisions before the Board. As a result,

Solomon's name was removed from the ballot, while incumbent Al Riley's name was retained on

the ballot. The transcripts of the hearings correctly identify each of the Board members who

took part in the decisions, including Cassandra B. Watson.

¶ 6       On January 13, 2014, following the Electoral Board's rulings, Solomon filed petitions in

the circuit court seeking judicial review of both of the Board's decisions. In the petitions,

Solomon identified respondents as Benjamin Ramsey, Al Riley, the Electoral Board, and seven

of the eight individuals who comprised the Board. In reliance of the Board's letterhead, Solomon

incorrectly named Judith C. Rice as a respondent rather than Cassandra B. Watson, who was the

member who actually took part in the Board's decisions. Solomon served Benjamin Ramsey, Al

Riley and the Electoral Board with copies of his petitions seeking judicial review. He did not

serve copies of his petitions to any of the individual Board members.

¶ 7       Respondents filed motions to dismiss Solomon's petitions for judicial review, and the

matters were consolidated in the circuit court. In support of their motions, respondents alleged

that Solomon failed to comply with section 10-10.1(a) of the Illinois Election Code, thereby

depriving the circuit court of subject matter jurisdiction over Solomon's petitions for judicial

review. 10 ILCS 5/10-10.1(a) (West 2012). In pertinent part, respondents observed that

Solomon incorrectly named Judith C. Rice rather than Cassandra B. Watson as a Board member. In addition, Solomon failed to serve the individual Electoral Board members.

¶ 8     The circuit court presided over a hearing on respondents' motions to dismiss. After hearing the arguments from both sides, the court granted respondents' motions to dismiss, explaining:

> "The only issue I have to address is the one of service. It was improper service under the statute. The board members were not given proper service. Just based on that alone, I don't have subject matter jurisdiction. I don't have to address anything else. With respect to the letterhead at this stage, the Court finds there was failure to perfect service as required under the First District and the First District case law. And for that reason, [the] motion [to dismiss] is granted."

¶ 9     This appeal followed.

¶ 10                              ANALYSIS

¶ 11     On appeal, Solomon urges this court to reverse the circuit court's finding that it lacked subject matter jurisdiction over his petitions for judicial review of the Electoral Board's decisions. Although he acknowledges that he improperly named one of the individual Board members, he argues that this error should be overlooked because the Board misrepresented and misidentified its individual members in the letters it sent to him prior to the hearing. Solomon also acknowledges that he failed to serve the individual members of the Board, but argues that the service would have been duplicative since he served the Electoral Board, as an entity.

¶ 12     Respondents, in turn, argue that the circuit court correctly dismissed Solomon's appeals for lack of subject matter jurisdiction because he failed to properly name and serve all the necessary parties as required by the Illinois Election Code.

¶ 13    When a party seeks judicial review of an electoral board's decision, the resulting "proceeding is in the nature of administrative review." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 46. The issue as to whether a court has subject matter jurisdiction to review an electoral board's decision is an issue of law that is subject to *de novo* review. *Rivera v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283, ¶ 19.

¶ 14    It is well established that "[c]ourts have no inherent power to hear election contests, but may do so only when authorized by statute and in the manner dictated by statute." *Pullen v. Mulligan*, 138 Ill. 2d 21, 32 (1990); *Rivera*, 2011 IL App (1st) 110283, ¶ 20. Section 10-10.1(a) of the Illinois Election Code sets forth the procedure for interested parties to follow to seek judicial review of an electoral board's decision. That provision, in pertinent part, sets forth the necessary prerequisites to establish subject matter jurisdiction and provides as follows:

"§ 10-10.1

(a) Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court and must serve a copy of the petition upon the *electoral board* and other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the electoral board as provided in Section 10-10. The petition shall contain a brief statement of the reasons why the decision of the board should be reversed. The petitioner shall file proof of service with the clerk of the court. No answer to the petition need be filed, but the electoral board shall cause the record of proceedings before the electoral board to be filed

with the clerk of the court on or before the date of the hearing on the petition or as ordered by the court." (Emphasis added.) 10 ILCS 5/10-10.1(a) (West 2012).

¶ 15    Based on the plain language of section 10-10.1(a), courts have consistently held that a party contesting a decision of an electoral board must satisfy "four distinct requirements" to confer jurisdiction on the circuit court. *Bill v. Education Officers Electoral Board of Community Consolidated School District No. 181*, 299 Ill. App. 3d 548, 551 (1998). "First, a challenging petition must be filed with the clerk of the court within [five] days after the electoral board issues its decision. Second, the petition shall state briefly the reasons why the board's decision should be reversed. Third, the petitioner shall serve copies of the petition upon the electoral board and other parties to the proceeding by registered or certified mail. Fourth and finally, the petitioner shall file proof of service with the clerk of the court." *Id.*; see also *Rivera,* 2011 IL App (1st) 110283, ¶ 22; *Allord v. Municipal Officers Electoral Board for the Village of South Chicago Heights*, 288 Ill. App. 3d 897, 901 (1997). Courts have also consistently held that strict compliance with section 10-10.1(a) of the Election Code is required; however, they have differed over what strict compliance entails. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 16. The source of the disagreement amongst different appellate courts has historically centered around the type of action that is required to properly serve an electoral board and whether or not a petitioner is required to serve every member of the board in addition to serving the board as an entity to satisfy the service requirements of section 10-10.1(a) of the Election Code. *Id.*

¶ 16    The First District has repeatedly concluded that section 10-10.1(a) required a party appealing an election board's decision to serve the individual members of the board as well as the board itself and that a party's failure to effectuate proper service on both the board and its members deprived the circuit court of jurisdiction over the matter. See, *e.g.*, *Nelson v.*

*Qualkinbush*, 389 Ill. App. 3d 79, 90 (2009) (holding that the electoral candidate's failure to properly serve the electoral board in addition to serving the individual board members with a petition seeking judicial review deprived circuit court of subject matter jurisdiction to review the board's decision); *Bill*, 299 Ill. App. 3d at 553 (affirming the circuit court's dismissal of the petitioners' petitions for judicial review for lack of subject matter jurisdiction where the petitioners failed to name and serve the individual members of the electoral board); see also *Rivera*, 2011 IL App (1st) 110283, ¶ 24 (recognizing that section 10-10.1(a) of the Election Code required petitioners seeking review of an election board's decision to serve the board itself as well as the individual board members). In doing so, the First District has reasoned that the individual board members themselves constituted necessary "other parties" specified in that statutory provision since they are the specific individuals that rendered the board's decision. See, *e.g., id.* ("[S]ection 10-10.1 requires a petitioner to serve a copy of his petition upon those who are indispensable parties to his cause ***. [Citations.] Clearly, from the statutory language, this includes the Board itself as the entity that issued the decision which the petitioner seeks to challenge. [Citations.] However, this also includes those individual Board members who participated in the decision, as they were the ones who actually reached the decision of the Board.").

¶ 17 In contrast, the Third and Fifth Districts have held that duplicative service is not necessary to satisfy the serve requirements set forth in section 10-10.1(a) of the Election Code. For example, in *Langenstein v. Kassimali*, 2012 IL App (5th) 120343, the Fifth District concluded that the petitioners satisfied the Election Code's service requirements by serving individual members of the election board rather than the board itself. In doing so, the Fifth District agreed with the petitioners' argument that "nothing in the Election Code suggests that the

county election board exists beyond its individual members or that separate, duplicative service must be made upon the entity *and* its members." (Emphasis in original.) *Id*. ¶ 5. Thereafter, in *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699, the Third District agreed with the *Langenstein* court's approach and also concluded that section 10-10.1(a) of the Election Code did not mandate duplicative service on both the board and its members. *Id*. ¶ 17.

¶ 18    In its recent decision, *Bettis v. Marsaglia*, 2014 IL 117050, the supreme court examined the various interpretations reached by the different appellate court districts. In doing so, the court acknowledged that section 10-10.1(a) was ambiguous and that the "two constructions of section 10-10.1(a) that have been proposed by the appellate court are both reasonable." *Id*. ¶ 24.[1] The court explained, "[o]ne could certainly read the statute and conclude, as did [the First District in] *Nelson* and its progeny, that service on the board and each member of the board is required. However, we believe that someone could just as easily reach the same conclusion as the Third and Fifth Districts: that service on every member of the board necessarily accomplishes service on the board." *Id*. After examining both approaches, the court ultimately concluded:

"[W]e believe that the Third and Fifth Districts have proposed the better interpretation. First, we note our agreement with *Langenstein* and *Carlasare* that, in cases such as this, service on the [Board] as an entity when the petitioner has already served every member of the board would be entirely duplicative. *Langenstein* and *Carlasare* pointed out that service on the board as a separate entity would mean serving the same person with process twice. No one who had not already been served with a copy of the petition would receive notice when the board was served as a separate legal entity. Thus, we would be hesitant to endorse this redundant requirement unless the statute clearly required it, and

---

[1] This court notes that there are theoretically 16 different ways to interpret section 10-10.1's ambiguous service requirements. See appendix.

we do not believe that it does. Our overriding purpose in construing a statute is to ascertain the legislature's intent, and the obvious intent behind section 10-10.1(a) is to ensure that all necessary parties receive notice that a petition for judicial review has been filed. That purpose was accomplished fully in this case, and neither the statute nor the policy informing the statute requires more.

Moreover, when the statute is read in conjunction with section 10-9, we find that the better interpretation is that a petitioner has served the board when he or she has served every member of the board. Section 10-10.1(a) requires service upon the electoral board, and the board has a statutorily defined membership. ***

***

Finally, this court has noted that access to a place on the ballot is a substantial right not lightly to be denied. *** We see no reason why the policy favoring ballot access should not lead us to adopt the interpretation that simplifies procedure. *** For all of the above reasons, we conclude that the petitioner served the board when she served every member of the board." *Id*. ¶¶ 25-28.

¶ 19    Applying *Bettis*, we conclude that Solomon complied with section 10-10.1(a)'s service requirements. The facts in this case are the converse of those present in *Bettis*. That is, Solomon served the Board as an entity but did not serve the individual Board members. Nonetheless, we believe that the same reasoning applies. Notably, the supreme court did not hold that service on individual board members was the only way to properly serve an electoral board; rather, the court merely agreed with the petitioner's argument that section 10-10.1(a) does not require duplicative service and that "[t]he petitioner served the board when she served every member of the board." *Id.* ¶ 28. Here, because the Board as an entity has a statutorily defined membership

(10 ILCS 5/10-9 (West 2012)), it logically follows that service on the Board also effectuates service on those individuals who comprise the Board. *Id.* ¶¶ 26-27. Moreover, because the *Bettis* decision makes it clear that section 10-10.1(a) does not require duplicative service, Solomon was not required to serve the individual Board members when he had already effectuated proper service on the Board itself. *Id.* ¶ 25. Accordingly, we conclude that subject matter jurisdiction was properly conferred upon the circuit court when Solomon served the Electoral Board as a legal entity. [2]

¶ 20      In so holding, we acknowledge that Solomon failed to properly identify as respondents each of the Electoral Board members who issued the decision removing him from the ballot and keeping Al Riley's name on the ballot. In particular, Solomon erroneously named Judith C. Rice, rather than Cassandra B. Watson, as a Board member. However, the *Bettis* decision emphasized that section 10-10.1(a) only contains four explicit jurisdictional requirements and that "[t]he statute does not require the naming of parties." *Id.* ¶ 32. Accordingly, Solomon's erroneous inclusion of Rice's name and his omission of Watson's name did not operate to otherwise deprive the circuit court of subject matter jurisdiction over his petitions seeking judicial review of the Board's decisions. *Id.* We therefore need not consider Solomon's arguments pertaining to the doctrines of detrimental reliance and equitable estoppel; however, we nonetheless emphasize that we do not condone the Electoral Board's use of an outdated letterhead that incorrectly identified its members.

¶ 21                                  CONCLUSION

---

[2]  We note that our colleagues in the First District's Second Division recently filed an unpublished order interpreting the *Bettis* decision to require service only upon the individual Board members. In doing so, the court rejected the petitioner's argument that service on the Board as an entity satisfied section 10-10.1(a)'s service requirements as interpreted by *Bettis*. See *Jackson v. Robinson*, 2015 IL App (1st) 150264-U, ¶ 13 ("[W]hile service on the Board as an entity is not required, the court clearly held that service on every party was necessary ***."). Because the disposition was filed as an unpublished order, however, we note that it does not constitute binding precedential authority. Ill. S. Ct. R. 23(e) (eff. July 1, 2011).

¶ 22 The judgment of the circuit court is reversed.

¶ 23 Reversed.

Appendix

| | Electoral Board as separate entity at official address | Board Member at official address | | Each Board Member at home or business address |
|---|---|---|---|---|
| | | collectively | individually | |
| 1 | - | - | - | - |
| 2 | X | X | X | X |
| 3 | X | | | |
| 4 | | X | | |
| 5 | | | X | |
| 6 | | | | X |
| 7 | X | X | | |
| 8 | X | | X | |
| 9 | X | | | X |
| 10 | | X | X | |
| 11 | | X | | X |
| 12 | | | X | X |
| 13 | X | X | X | |
| 14 | | X | X | X |
| 15 | X | | X | X |
| 16 | X | X | | X |

This court notes that there are four possible categories of service under a plain reading of the statute (the electoral board as an entity; board members served collectively at the board address; board members served individually at the board address; and individual board members served at their home or business addresses), which results in 16 possible combinations. To match the equation for combinations, one of the possibilities is "0" or "-", that is, taking no action at all.